## 38216. SOUTHERN FEDERAL SAVINGS & LOAN ASSOCIATION OF ATLANTA v. LYLE.

GREGORY, Justice.

This usury case comes to this court on writ of certiorari.

On February 28, 1975, respondent Lyle executed a promissory note secured by a deed to secure debt to Southern Federal for $65,000, with interest on the unpaid principal balance from the date of the note at 8 3/4% per annum. Lyle was to repay the standard form note "in consecutive monthly installments of $512 on the 15th day of each month beginning April 15, 1975, until the entire indebtedness evidenced hereby is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on the 15th day of March, 2005." The note also provided the following penalty provision regarding late charges: "The undersigned shall pay to the holder hereof a late charge of 4 percent of any monthly installment not received by the holder hereof within 15 days after the installment is due." The note contained no specific provisions regarding the computation of interest; however, upon execution of the note, Lyle was orally informed of the method used to calculate interest on the loan.

At this time Lyle was also given a Letter of Account from Southern Federal which set forth in writing the oral representations regarding interest computations. This Letter explained that "[i]nterest on this loan is figured by our Burroughs on-line computer on the first of each month. At that time the monthly interest amount is added to the loan balance." The Letter concluded that "[i]f payments are made per your loan contract, the payments will repay your loan in the number of years specified in your loan deed."

In accordance with the provisions of the note and the Letter of Account, interest for the month of March was computed on March 1 and added to the principal, resulting in a new loan balance of $65,473.95. On April 1, interest for the month of April was computed. In this computation, as in all subsequent monthly computations, interest was charged on the entire loan balance (both principal and unpaid interest), resulting in a new loan balance of $65,951.35 before the first monthly payment of $512 was due on April 15. As a result, Lyle's loan balance was not reduced to a level below $65,000 (the

original principal) until May 15, 1976. Lyle made thirty-three monthly payments before retiring the balance of the note — $64,021.91 — in December 1977. At this rate of amortization, Lyle would have been left at the end of 359 consecutive monthly payments of $512 with a final, unequal balloon payment of $5,868.82 due on March 15, 2005.

Lyle brought suit against Southern Federal, alleging it violated the state usury laws by charging interest on his real estate loan in excess of the 9% allowable when the loan was made in 1975. The trial judge granted Southern Federal's motion for summary judgment after concluding that the Letter of Account was part of the contract, but that when properly interpreted, the contract was not usurious. The trial judge also determined that it was unlawful for Southern Federal to have charged interest in advance of any principal balance payment and thereafter to charge "*interest on that interest,*" and he ordered Southern Federal to refund the excess interest paid ($110) to Lyle.

The Court of Appeals reversed the grant of summary judgment, holding: (1) that the Letter of Account was part of the contract; (2) that the three parts of the contract — the note, the security deed, and the Letter of Account — were unambiguous, consistent, and required (without resorting to rules of contract interpretation) a final balloon payment; (3) that the interest contracted for in this loan was above the legal usury limits for real estate loans; and (4) that since an issue of intent (an essential element in all usury cases) is present and unresolved, a grant of summary judgment for either side was improper.

We granted certiorari to consider: (1) whether the Court of Appeals erred in its construction of the contract; and (2) whether the Court of Appeals erred in computing the interest charged.

The Court of Appeals properly found that the contract in this case was evidenced by three documents present at closing — the loan note, the security deed, and the Letter of Account. The court found that the written terms of the contract were unambiguous and consistent, requiring Lyle to repay the loan in 359 equal consecutive monthly installments with a final balloon payment of $5,868.82. The court then computed the total interest which would be charged over the period of this irregularly amortized loan ($124,677). Because this total amount of interest exceeded the total interest that would be charged on a $65,000 loan at 9% (the maximum lawful interest) regularly amortized over 360 consecutive equal monthly payments ($123,287.82), the Court of Appeals held that the interest charged was above the legal ceiling.

We find, however, that certain key parts of this contract are

ambiguous. When we look beyond the written words of the contract, it is clear that these parties had intended to, and did in fact contract for different terms than those described by the Court of Appeals. Because we further find that there was no usury in the true contract between the parties, and that the trial judge's grant of summary judgment for Southern Federal was proper, we reverse.

(1) One of the key questions in determining whether these parties contracted for usury is whether it was proper for Southern Federal to make its March 1 interest charge, add this interest to the outstanding principal, and thereafter charge 8 3/4% interest on that amount as though it were principal. This question is critical because this action by Southern Federal caused the irregular amortization of this loan, resulting in a final balloon payment, and formed the basis for the Court of Appeals determination that the parties contracted for a usurious rate of interest.

The answer to this question, however, is not found in the written terms of the contract. As will be seen below, the contract terms are themselves inconsistent and ambiguous with respect to this question.

The note contains three relevant provisions. First, the interest charge of 8 3/4% is to be made on the *"unpaid principal balance."* Second, the *"principal and interest"* are payable in consecutive monthly installments of $512. Finally, a late charge of 4% is made on any monthly installment more than 15 days overdue.

The Letter of Account contains two relevant provisions. First, when interest *"on the loan"* is figured on the first of each month, this monthly interest charge is added to the *"loan balance."* Next, when a monthly payment is received, the amount of payment goes directly to *"principal and escrow (if any)."*

With these terms in mind, we now pose the question: was Southern Federal authorized under these terms of this contract to make the March 1 interest charge, add this interest to the outstanding principal, and thereafter charge 8 3/4% interest on that amount as though it were principal?

Because of the ambiguity which results from the two documents above using different terms with different meanings to try to explain the same transaction, we are unable to properly answer this important question from the written contract terms.

The note indicates that the interest rate of 8 3/4% is only to be charged against the *"unpaid principal balance."* By further stating that *"principal and interest"* are both payable in consecutive monthly installments, the note suggests that principal and interest repayments are treated separately, and that interest on unpaid interest might be treated differently from interest on unpaid principal. The presence of the penalty clause further confuses the

issue. Unpaid, overdue installments accrue interest at the rate of only 4%. It seems unlikely that the parties intended the March 1 interest charge (which was not due and payable) to draw interest at a rate of 8 3/4% per annum. The Letter, however, states that the monthly interest is to be computed *"on the loan"* and added to the *"loan balance,"* but the monthly payments go directly to reduce *"principal and escrow."* These terms suggest that the full monthly payment, directly reduces the outstanding principal, but interest (of some unstated amount) is charged against the entire loan balance (presumably outstanding principal and interest) each month. At this point, all that is clear is that a real ambiguity exists.

In interpreting all contracts, our fundamental goal is to find and give effect to the true intent of the contracting parties. Code Ann. § 20-702; *Carsello v. Touchton,* 231 Ga. 878, 880 (204 SE2d 589) (1974). Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. *DeLong v. Cobb,* 215 Ga. 500, 504 (111 SE2d 89) (1959). Where, as here, ambiguities exist, we may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Code Ann. § 20-704 (1); *A. C. Alexander Lumber Co. v. Bagley,* 184 Ga. 352, 362 (191 SE 446) (1937). When we look beyond the confusing contract terms in this case, the intent of the parties is clear.

To determine the intent of the parties, we looked to the affidavit of Charles P. Owens, President of Southern Federal, the deposition of Mr. Lyle, and the Disclosure Statement provided Mr. Lyle by Southern Federal for this loan.[1] These three sources show that the early capitalization of interest, which resulted in the irregular amortization and balloon payment, was unforeseen and unintended by either party when the loan was made.

Mr. Owens, in his affidavit, stated that it was Southern Federal's intent to fully amortize the loan over 359 equal payments of $512 and a final payment of less than $512, and that these "terms of the transaction" were "expressed in the Disclosure Statement." He further stated that "[t]he fact that the first month's interest was capitalized and may have on Defendant's books theoretically been shown as a 'balloon' was unanticipated and unforeseen by Southern Federal at the time said loan was made."

---

[1] The Disclosure Statement, required by Federal Truth-in-Lending laws, was not considered as part of the written contract because the trial judge found that it was not actually delivered to Lyle until some time after the loan closing and could not properly be considered a part of the closing papers.

The following excerpt from the deposition of Mr. Lyle demonstrates his understanding and intent at the time of this transaction:

"Q. Did you at the time the loan was made have any idea or knowledge that, as you state in your pleadings, the last payment would be a balloon payment?

"A. (Mr. Lyle) None whatsoever.

"Q. You expected to pay it off in equal installments of $512?

"A. Yes.

"Q. That was your intent at the time, to pay it off, you thought that that would amortize it over the thirty years?

"A. Yes, that is correct.

"Q. $512 equal monthly installments for the three hundred and sixty payments, eight and three-quarters [percent per annum] would amortize it?

"A. Yes."

(Lyle later states in this deposition that, based on the agreed upon amortization schedule, his "last payment would probably be less than $512.")

The Disclosure Statement provides for the following:

"8. Payment for principal and interest on this transaction shall be 360 monthly installments of $512 beginning on the 15th day of April, 1975, and due on the 15th day of 'each month thereafter."

This evidence shows that the parties intended for this loan to be regularly amortized so that after 359 equal consecutive monthly payments of $512, beginning on April 15, 1975, a final unequal payment of an amount less than $512 would be due on March 15, 2005. Such an intent is entirely consistent with the written terms of the contract, and it fully explains the contract terms, resolving all ambiguities. Because the parties did not agree to capitalize the early interest charge, the trial judge properly ordered Southern Federal to refund to Lyle the excess interest that the capitalized interest accrued.

(2) The contract between the parties, as interpreted by this court, must now be examined to determine if it violated our usury laws.

The method used by the Court of Appeals to determine whether the parties contracted for usury failed to take into account what it believed to be the actual outstanding principal balance of the loan. Instead, it simply compared the interest charged in that loan to the interest that could be charged on a loan for the same principal amount, regularly amortized over the same repayment period at the maximum interest rate. We reject this approach. While it might be a good guideline for regularly amortized loans, it is an inappropriate

measure for determining usury in the case of irregularly amortized loans, "balloon" payment loans, or interest only loans because it fails to take into account the actual outstanding principal balance. We adhere to the actual declining-principal balance method originally set out in *Union Savings Bank &c. Co. v. Dottenheim,* 107 Ga. 606 (34 SE 217) (1899), because we believe that usury on a particular loan can only be determined by proper reference to the actual outstanding principal balance on that loan.

We find that this contract to loan $65,000 over a period of 30 years at 8 3/4% interest per annum, which was regularly amortized over 359 equal payments of $512 and one final payment of less than that amount, did not charge interest above the maximum legal rate of 9% per annum, and cannot be considered usurious.

*Judgment reversed. All the Justices concur, except Weltner, J., who is disqualified.*

DECIDED APRIL 21, 1982.

*Kirk W. Watkins,* for appellant.
*Harry W. Pettigrew,* for appellee.