A07A1705. 4 G PROPERTIES, LLC v. GALS REAL ESTATE, INC.
(656 SE2d 922)

ANDREWS, Presiding Judge.

GALS Real Estate, Inc. (GALS) sued 4 G Properties, LLC (4G) alleging that 4G breached a commercial lease contract entered into by the parties in conjunction with 4G's sale of a shopping center to GALS. After a bench trial, the trial court ruled in favor of GALS and 4G appeals. For the following reasons, we affirm.

Evidence presented at the trial showed that, when 4G sold the shopping center to GALS, part of the commercial space in the shopping center was already leased to and occupied by various tenants, but 8,040 square feet of the shopping center was vacant and not leased to any tenant. In conjunction with the sale, GALS and 4G entered into a commercial lease contract, whereby 4G agreed for a period of one year to pay GALS $8,040 per month (one dollar per square foot) as rent on the vacant space. The lease contract provided that: "This lease is to be considered a 'Master Lease' and as additional units are rented in the [shopping center], [4G] will be allowed credit for the same and [4G's] obligation to [GALS] under this lease will be reduced by the number of square feet leased to other tenants subsequent to the date of this lease." The lease contract between GALS and 4G is hereinafter referred to as the Master Lease.

The present dispute arose after GALS entered into a number of lease contracts with new tenants to build out and lease vacant space in the shopping center. The lease contracts typically gave a new tenant a period of time after the contract was signed to build out the space to make improvements necessary for the tenant's business, after which the lease term commenced and rent was payable. In its breach of contract claim on the Master Lease, GALS agreed that the Master Lease provided that 4G was entitled to reduce the $8,040 monthly payment by the amount of square footage rented to new tenants, but it claimed that 4G breached the Master Lease by reducing the $8,040 payment during the new tenants' build-out periods when GALS was not entitled to receive rent from the tenants. According to GALS, the Master Lease provided that 4G was entitled to reduce the $8,040 monthly payment only after each new tenant became obligated to pay rent. 4G's defense, and the basis for its

counterclaim for overpayment of amounts due, was that the Master Lease unambiguously provided that reduction of the $8,040 monthly payment commenced as to each new tenant when GALS signed a lease contract with each tenant, and therefore the reduction also applied during the pre-rent build-out period.

4G claims that the trial court erred by finding that provisions of the Master Lease were ambiguous and subject to being construed by the court. Construing the terms of an express contract is generally a question of law for the court, unless an ambiguity is presented which cannot be resolved by the ordinary rules of construction. *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce*, 238 Ga. 551, 553 (233 SE2d 753) (1977). The cardinal rule of construction is to ascertain the intent of the parties, and "[w]here the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." *Southern Fed. S & L Assn. &c. v. Lyle*, 249 Ga. 284, 287 (290 SE2d 455) (1982). Unambiguous language capable of only one reasonable interpretation is afforded its literal meaning, and plain words are given their usual significance. *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302 (99 SE2d 95) (1957). "[B]ut technical words, or words of art, or [words] used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning. . . ." (Citation and punctuation omitted.) *Pace Constr. Corp. v. Houdaille-Duval-Wright Div. &c.*, 247 Ga. 367, 368 (276 SE2d 568) (1981); OCGA § 13-2-2 (2).

> "Ambiguity" is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies "of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; [or] open to various interpretations."

(Citation and punctuation omitted.) *Early v. Kent*, 215 Ga. 49, 50 (108 SE2d 708) (1959). Unless an ambiguity exists, the court may not look outside the terms of the contract to consider surrounding circumstances or parol evidence. *Lyle*, 249 Ga. at 287; *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (467 SE2d 510) (1996). Finally, a contract capable of being construed two ways will be construed against the party who wrote the contract. *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990).

Applying the above principles, we conclude that the trial court did not err by finding an ambiguity in the Master Lease and by seeking to resolve the ambiguity by consideration of surrounding circumstances, parol evidence, and application of the rules of construction. The written instrument did not clearly define what the parties intended by stating that the lease would be considered a

"Master Lease." Moreover, with respect to the $8,040 monthly payment owed by 4G, the Master Lease refers to both a credit for space "rented" and a reduction for space "leased." The trial court considered evidence that the term "Master Lease," as used in the commercial real estate business, referred to a commonly used device by which the seller, to induce the purchase of property with vacant commercial space, agrees to pay a certain amount of rent to the purchaser on the vacant space until the purchaser rents the space to other tenants. Evidence showed that it was common practice when leasing commercial space to allow a new tenant a build-out period to make necessary improvements to the space before the tenant becomes obligated to pay rent under the lease. Evidence also showed that the Master Lease was prepared by 4G.

The evidence considered by the trial court supports the court's construction that the intent of the parties in the Master Lease with respect to each new tenant was to allow 4G to reduce its monthly obligation to pay $8,040 only after the build-out period expired and the new tenant became obligated to pay rent to GALS on the built-out space. The trial court properly rendered judgment in favor of GALS and against 4G's counterclaim.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JANUARY 25, 2008.

*Amy Dever,* for appellant.
*John C. Cotton,* for appellee.