**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0607. WHITE et al. v. WEINBERG.

ANDREWS, Presiding Judge.

Pursuant to a written consignment agreement, Robert Weinberg consigned jewelry (a ring) for auction by L. R. Barnes, LLC d/b/a Four Seasons Auction Gallery of Forsyth (Barnes) and its licensed auctioneer, Steve White.[1] The ring was auctioned without reserve on February 5, 2011, and White accepted the bid made by the highest bidder in the amount of $2,300.00. The bidder failed to make payment and close the sale, and the ring remained in the possession of Barnes and White. Weinberg sued Barnes and White (individually) on various theories after they refused his demand that they return the unsold ring without payment of commission or other fees under

---

[1] White is the owner and sole member of the LLC. The consignment agreement stated that it was between Weinberg and "Four Seasons Auction Gallery of Forsyth/Steve White," and was signed by Weinberg and White.

the agreement. Asserting rights under the consignment agreement to a commission and other fees, both defendants answered and denied the allegations, and Barnes counterclaimed for breach of contract. White and Barnes appeal from the trial court's orders partially granting Weinberg's motion for summary judgment, and partially denying their motion for summary judgment. For the following reasons, we affirm.

In a seven count complaint, Weinberg sought to impose liability and collect damages as follows: "fraud" (count 1); "negligent misrepresentation" (count 2); "violation of OCGA § 10-1-393 (b)" (count 3); "conversion" (count 4); "piercing the corporate veil as to defendant White and alter ego" (count 5); "unjust enrichment or in the alternative breach of contract" (count 6), and "attorneys' fees pursuant to OCGA § 13-6-11 and punitive damages" (count 7). Weinberg moved for summary judgment on his fraud, negligent misrepresentation, and conversion claims. Barnes and White moved for summary judgment on all of Weinberg's claims, and Barnes moved for summary judgment on its breach of contract counterclaim.

As to Weinberg's claims based on fraud (count 1) and negligent misrepresentation (count 2), the trial court denied summary judgment to Weinberg and granted summary judgment in favor of Barnes and White. As to Weinberg's claim based on a violation of OCGA § 10-1-393 (b) (count 3), the trial court noted in its

2

summary judgment orders that Weinberg's attorney announced at a motions hearing that count 3 would be dismissed. Although the record does not reflect that Weinberg has dismissed count 3 of the complaint, the trial court ruled that the summary judgment orders had the effect of dismissing count 3. As to the conversion claim in count 4 of the complaint, the trial court granted summary judgment in favor of Weinberg on the issue of liability, and denied the motion by Barnes and White for summary judgment. Count 6 of the complaint sets forth claims for unjust enrichment or alternatively for breach of contract. Although Weinberg did not move for summary judgment on either of the alternative claims asserted in count 6, the trial court granted summary judgment in favor of Weinberg for breach of contract (liability only), and denied the motion by Barnes and White for summary judgment on count 6. Count 5 of the complaint captioned "piercing the corporate veil as to defendant White and alter ego as to all defendants," alleges that White acted as the representative, agent, and auctioneer for Barnes, and that, to the extent White is a member of the Barnes LLC, "the corporate veil must be pierced" to hold White individually responsible for damages in contract and tort. Weinberg did not specifically move for summary judgment on the allegations in this count, nor did his motion for summary judgment request a specific ruling on White's individual liability on contract or tort claims.

3

Nevertheless, to the extent the trial court granted summary judgment in favor of Weinberg and against White, it found that White signed the consignment agreement as an individual and not in any representative capacity for the LLC, and granted summary judgment against White individually. The trial court denied the motion by Barnes and White seeking summary judgment in their favor on the allegations in count 5. As to claims for attorney fees pursuant to OCGA § 13-6-11 and punitive damages asserted by Weinberg in count 7 of the complaint, the trial court ruled that whether these damages should be awarded and the amount were issues of fact, and denied the motion by Barnes and White for summary judgment in their favor on these issues. Finally, the trial court denied the motion by Barnes for summary judgment on the issue of liability on its counterclaim for breach of contract.

1. Barnes and White contend that the trial court erred by granting summary judgment in favor of Weinberg on his conversion claim.

The relationship between Weinberg (as seller of consigned property) and Barnes and White (as auctioneers of the property) was that of principal and agent, and the consignment agreement between the parties set forth the terms or scope of the relationship. *Deere & Co. v. Miller-Godley Auction Co.*, 249 Ga. App. 797, 799 (549 SE2d 762) (2001). "[I]f a paid agent does something wrongful, either knowing it to

4

be wrong, or acting negligently, the principal may have either an action in tort or an action in contract." Restatement (Second) of Agency § 401 cmt. a (1958); *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287) (1978). An agent who acts in excess of granted authority to wrongfully assert dominion over the principal's property may be held liable for conversion.[2] *Youngblood v. Mock*, 143 Ga. App. 320 (238 SE2d 250) (1977); *Deere & Co.*, 249 Ga. App. at 798-799. It follows that Weinberg's conversion count requires a determination as to whether, when Barnes and White refused to relinquish possession of the ring acquired pursuant to the consignment agreement, they wrongfully exercised dominion over the ring in a manner inconsistent with their authority under the agreement.

Undisputed evidence shows that pursuant to the consignment agreement, Weinberg placed his property (a ring) in the possession of Barnes and its auctioneer, White, to act as his agents to auction without reserve the ring to the highest bidder; that Barnes and White conducted an auction on February 5, 2011 and accepted the highest bid on the ring in the amount of $2,300.00; that the bidder failed to pay the

---

[2] "It is unnecessary to show that the defendant applied [the property] to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it." *Deere & Co.*, 249 Ga. App. at 799 (punctuation and citation omitted).

bid amount and close the sale; that Barnes and White retained possession of the ring while attempting to collect payment from the bidder; and that no later than April 1, 2011, Weinberg demanded that Barnes and White return the ring. Weinberg contends that, pursuant to the consignment agreement, he is entitled to return of the unsold ring without payment or condition; that he demanded return of the ring from Barnes and White; and that their refusal to return the ring is conversion of his property. Barnes and White contend that, under the consignment agreement, even though the ring remained unsold after the February 5, 2011 auction, they had the right to retain possession of the ring indefinitely to sell it at a subsequent auction; that when Weinberg demanded return of the unsold ring, the ring became an "item withdrawn by the seller" from auction on which they were entitled to payment of a 25% commission and a buyers premium; and that these sums were a lien on the ring which entitled them to retain possession until it was satisfied. See OCGA § 44-14-400. In the alternative, Barnes and White contend they had a right to retain possession of the unsold ring because, even if Weinberg's demand for return of the ring was not a withdrawal of the ring from auction under the consignment agreement, he left the unsold ring with them in excess of ten business days after the February 5, 2011 auction, which entitled them under the agreement to storage and other fees

6

(constituting a lien on the ring) and to sell the ring at a subsequent auction without notice.

Construction of the consignment agreement is a question of law for the court, unless the language in the agreement presents an ambiguity that cannot be resolved by the rules of construction. *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce,* 238 Ga. 551, 553 (233 SE2d 753) (1977).

> The cardinal rule of construction is to ascertain the intent of the parties. *Irvin* [*v. Laxmi, Inc.,* 266 Ga. 204, 205 (467 SE2d 510) (1996)]. "Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." *Southern Fed. Sav. & Loan Assn. &c. v. Lyle*, 249 Ga. 284, 287 (290 SE2d 455) (1982); *Park 'N Go of Ga. v. U. S. Fidelity &c. Co.,* 266 Ga. 787, 791 (471 SE2d 500) (1996). To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. *Cole v. Thrasher,* 246 Ga. 683, 684 (272 SE2d 696) (1980); *McCann v. Glynn Lumber Co.,* 199 Ga. 669, 674 (34 SE2d 839) (1945).

*Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms, Inc.*, 276 Ga. App. 862, 866-867 (625 SE2d 57) (2005).

The consignment agreement (which was written by White) provided that the ring would be sold by auction at a scheduled time to the highest bidder, and that "[i]n case of an interruption of the scheduled auction due to weather, illness, or other unforeseen factors[,] the lots will be sold at an appropriate auction time as designated

7

by auctioneer which may be prior to, or later than, the original date." The agreement provided that fees and other amounts due to the auctioneer be deducted from the gross sales receipts collected from the auction sale, and provided that the auctioneer be paid a commission fee of 15% and a buyer's premium. The agreement provided for a higher auctioneer's commission fee under certain circumstances: "[a]uctioneer shall receive full commission of 25% and buyer's premium on any item withdrawn by the seller, sold after date of this contract, or items not meeting reserves." Under the agreement, "no items will be considered sold until [Barnes] is paid in full by the winning bidder." On items sold as a result of winning bids at the auction, the agreement provided that the auctioneer would settle with the seller only after the seller comes to Barnes's business office to sign for and receive the auction results, records, and net proceeds from the sale "no sooner than 2 weeks (excluding holidays) following the auction," except that, "[u]nder special conditions, bookkeeping may require up to 30 days to settle from the day of the auction, as no items will be considered sold until [Barnes] is paid in full by the winning bidder." The agreement further provides that "[a]ny unsold lots left by [seller] in excess of 10 business days after the announced auction will be charged $10 per day per item . . . [;] will be sold at auction without prior notice . . .[; and seller] will be charged a minimum of 25%

auctioneer fee and will be additionally held liable for accrued storage fees and moving charges."

Applying the above-stated rules of contract construction, we find that the ring at issue remained unsold under the provisions of the consignment agreement because it is undisputed that the winning bidder did not close the sale by paying for the ring at or after the auction. Under these circumstances, the agreement provided for a period of time up to 30 days after the auction to allow the auctioneer to take steps to collect payment and close the sale with the winning bidder. In this case, it is undisputed that the winning bidder did not pay within 30 days after the auction and that the ring remained unsold and in the possession of the auctioneer. We find no support in the agreement for the construction advanced by Barnes and White that the agreement gave them the right to possession of the unsold ring for an indefinite period of time until the winning bidder paid, or until they sold the ring to another winning bidder, no matter how many subsequent auctions or how long that might take. We conclude that the agreement to auction the ring contemplated a single scheduled auction (which could be re-scheduled under certain circumstances), and that, when the ring remained unsold more than 30 days after the auction (because the auctioneer was unable during that period to collect payment from the winning bidder),

Weinberg was entitled to return of the ring without payment of any sum under the agreement. Under the agreement, the charges for a normal commission fee of 15% and a buyer's premium are calculated on and deducted from gross sales receipts collected on a sold item. Since the ring was not sold, Weinberg did not owe these sums. The provision of the agreement that "[a]uctioneer shall receive full commission of 25% and buyer's premium on any item withdrawn by the seller, sold after date of this contract, or items not meeting reserves" applies to other circumstances not applicable in this case. "[W]ithdrawn by the seller" under the agreement means an item withdrawn from auction. When Weinberg demanded return of the unsold ring more than 30 days after the auction, he did not withdraw the ring from auction. The auction was completed and time had expired under the agreement for the auctioneer to close the sale with the winning bidder after the auction. The ring was not "sold after date of this contract" because the auctioneer's efforts after the auction date to collect from the winning bidder and close the sale were unsuccessful. The ring was not an item "not meeting reserves" because the ring was auctioned without reserve. Finally, we conclude that the portion of the agreement imposing storage and other fees on the seller for leaving unsold items with the auctioneer in excess of ten days after the auction does not apply to Weinberg under the present circumstances. That

10

provision states: "Any unsold lots left by [seller] in excess of 10 business days after the announced auction will be charged $10 per day per item . . .[;] will be sold at auction without prior notice . . .[; and seller] will be charged a minimum of 25% auctioneer fee and will be additionally held liable for accrued storage fees and moving charges." Construing all the terms of the agreement together to reconcile terms and uphold the agreement in whole and every part, we conclude that this provision applies only where an unsold item remains in the auctioneer's possession immediately after the auction, and the auctioneer has no interest under the agreement in retaining possession of the item. For example, the auctioneer would have no interest in retaining possession of an unsold item auctioned without reserve on which no bid was made. In that case, where the seller fails to retake possession of the unsold item during ten business days immediately following the announced auction, the seller thereafter owes storage and other fees and the item is subject to being sold at a subsequent auction without notice. But other provisions of the agreement apply where the auction produces a winning bid on an item, and (as in the present case) the auctioneer retains possession of the item after the auction because the bidder did not pay at the auction. In that case, the agreement provides the auctioneer with a period of up to 30 days after the auction to retain possession of the unsold item for the

11

purpose of collecting payment from the bidder and closing the sale. We find no basis for concluding, as Barnes and White argue, that the provision imposing storage and other fees on a seller for leaving an unsold item with the auctioneer for ten business days immediately following the announced auction also applies if a seller leaves an unsold item with the auctioneer for more than ten days after the expiration of the 30-day period for collecting payment from the winning bidder.

It follows that the refusal by Barnes and White to return the ring to Weinberg was a wrongful exercise of dominion over the ring in a manner inconsistent with their authority under the consignment agreement. Because undisputed facts show that Barnes and White had no authority under the consignment agreement to retain possession of the ring owned by Weinberg, the trial court correctly granted summary judgment in favor of Weinberg on the issue of liability on the conversion claim set forth in count 4. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). To the extent the trial court granted summary judgment on count 4 under a different construction of the consignment agreement, we affirm under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

2. Barnes and White contend that, because Weinberg did not move for summary judgment on the breach of contract claim set forth in count 6, the trial court erred by sua sponte granting summary judgment in favor of Weinberg on that claim.

Weinberg did not move for summary judgment on his breach of contract claim, but the trial court sua sponte granted summary judgment on the issue of liability in favor of Weinberg on that claim. "[I]n most cases it is the better practice to await a motion for summary judgment before entering it for a party, [but] it may not be erroneous under the circumstances of a given case, where the issues are the same as those involved in the movant's motion." *Stephens v. Alan V. Mock Const. Co., Inc.*, 302 Ga. App. 280, 288 (690 SE2d 225) (2010) (citation and punctuation omitted). In other words, "a trial court may grant summary judgment sua sponte under certain circumstances, so long as it ensures that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment." Id. (citation and punctuation omitted).

The issues raised in Weinberg's conversion claim regarding the construction of the consignment agreement are the same issues raised in Weinberg's claim that there was a breach of contract with respect to the consignment agreement. Moreover, Barnes raised these same issues in its counterclaim for breach of contract regarding

13

the consignment agreement. Accordingly, the issues raised and addressed with respect to Weinberg's motion for summary judgment for conversion, and with respect to Barnes's motion for summary judgment on its breach of contract counterclaim, were the same as the issues on Weinberg's breach of contract claim. Under these circumstances, Barnes and White had full and fair notice and opportunity to respond to the issues, and the trial court did not err in sua sponte granting summary judgment in favor of Weinberg on the issue of liability on his breach of contract claim.[3] Id. at 288-289.

3. Barnes contends that the trial court erred by denying its motion for partial summary judgment on its counterclaim for breach of contract regarding the consignment agreement. For the reasons stated in division 1, supra, the trial court correctly denied Barnes's motion for summary judgment on this issue.

*Judgment affirmed. McFadden and Ray, JJ., concur.*

---

[3] The trial court granted summary judgment in favor of Weinberg on conversion and breach of contract on the issue of liability only. The issue of damages was not raised by the parties or ruled on by the court. Although Weinberg is entitled to pursue conversion and breach of contract remedies to a point, "he is not permitted a double recovery of the same damages for the same wrong." *Marvin Nix Development Co. v. United Community Bank*, 302 Ga. App. 566, 568 (692 SE2d 23) (2010). To the extent a double recovery is sought based on breach of contract and tort claims, an election of remedies is required. *Nat. City Bank of Rome v. Busbin*, 175 Ga. App. 103, 104-105 (332 SE2d 678) (1985).

14