**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 14, 2017**

# In the Court of Appeals of Georgia

A17A2138. H&E INNNOVATION, LLC et al. v. SHINHAN BANK AMERICA, INC.

BARNES, Presiding Judge.

Following the grant of their application for interlocutory appeal, H&E Innovation, LLC ("H&E") and its managing member, Eun Gu Kim, appeal the trial court's order denying their motion to enforce a settlement agreement with Shinhan Bank America, Inc. (the "Bank"). The primary question in this appeal is whether the parties intended for the release of a second mortgage on certain property to be included as part of the settlement. For the reasons discussed below, we conclude that while the language of the parties' settlement agreement is ambiguous as to whether the parties intended to release the second mortgage, the rules of contract construction and the uncontroverted parol evidence resolve the ambiguity and demonstrate that the parties intended for the mortgage to be released. Because the trial court concluded otherwise, we reverse the trial court's denial of H&E and Kim's motion to enforce the

settlement agreement and remand this case for consideration of their request for attorney fees and expenses.

> We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. . . . The issues raised are analogous to those in a motion for summary judgment. The opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.

(Citations and punctuation omitted.) *Cone v. Dickenson*, 335 Ga. App. 835, 835 (783 SE2d 358) (2016). See also *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 729 (1) (621 SE2d 755) (2005). "A settlement agreement is a contract," *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 533 (2) (677 SE2d 328) (2009), and "[c]ontract disputes are particularly well suited for summary adjudication because the construction of contracts is ordinarily a matter of law for the court." *Riverview Condo. Assn. v. Ocwen Fed. Bank, FSB*, 285 Ga. App. 7, 9 (2) (a) (645 SE2d 5) (2007). Guided by these principles, we turn to the record in the present case.

On June 30, 2008, Kim obtained a $750,000 business loan from the Bank (the "Kim Loan") and executed a promissory note in favor of the Bank in that amount (the "Note"). On February 4, 2011, the parties entered into an agreement modifying the

terms of the Kim Loan (the "Change in Terms Agreement"), and H&E executed a commercial guaranty for repayment of the Note (the "Guaranty"). That same day, to further secure payment of the indebtedness, H&E conveyed a second mortgage to the Bank on certain real property located in Greenville, South Carolina (the "Second Mortgage"). H&E had granted a first mortgage on the same property to the Bank as part of a prior, unrelated commercial loan transaction (the "SBA Loan").

On September 9, 2014, the three parties executed a forbearance agreement pertaining to the Kim Loan in which the Bank agreed to refrain from commencing any legal action under "the Note and the Loan Documents" based on Kim's and H&E's failure to comply with their payment obligations so long as certain conditions were met (the "Forbearance Agreement"). The Forbearance Agreement identified the "Loan Documents" as including the Guaranty and other documents executed "on or about February 4, 2011."

On March 28, 2016, the Bank filed the present lawsuit against the defendants, Kim and H&E, for "breach of the Forbearance Agreement, the Note, and Guaranty," alleging that the defendants had defaulted on the Kim Loan by failing to keep current on their payments of the outstanding debt. The Bank's Complaint referred to the "Loan Documents" as "the Note, Security Deed, Change in Terms Agreement,

3

Guaranty, and other related document [sic]." Attached to the Complaint was an exhibit of "Loan Documents," which included several documents related to the Kim Loan, but not the Guaranty or the Second Mortgage. The Bank sought a monetary judgment jointly and severally against the defendants in the amount of the $177,097.24 principal balance remaining on the Note, plus 11 percent interest from the date of default, reasonable attorney fees, and court costs.

The defendants answered, denying that they were in default under the Kim Loan. The parties thereafter engaged in settlement negotiations, and on February 1, 2017, counsel for the Bank emailed the defendants' counsel an offer that contained the following terms:

> Defendants will pay, or cause to be paid, a lump-sum amount of $50,000.00 to Plaintiff within five business days from receiving a signed copy of the final Settlement Agreement from Plaintiff;
>
> Plaintiff and Defendants agree to a full, final, general mutual release of any and all claims and counterclaims arising from the loan documents sued upon in the lawsuit (i.e., the first mortgage on Greenville property remains intact); and
>
> Within 5 business days from receipt of a fully executed Settlement Agreement, the parties will file a joint dismissal of the lawsuit (including counterclaims) with prejudice.

4

An earlier, unaccepted offer made by the Bank had included the same general release language found in the second paragraph of the February 1, 2017 email, and the defendants' counsel had confirmed with the Bank's counsel during a phone conversation about the prior offer that the language was intended to include the release of the Second Mortgage.

It is undisputed that on February 2, 2017, the defendants, through an email sent by their counsel, accepted the offer of settlement as set out in the February 1, 2017 email (the "Settlement"). Upon acceptance, the defendants' counsel asked the Bank's counsel via email to "[p]lease prepare the settlement agreement consistent with the terms outlined in your email and a release for the second position mortgage on the South Carolina Property in relation to this loan." Plaintiff's counsel replied, "Good news. I will report the settlement to the bank and work on the settlement documents."

On February 14, 2017, the defendants' counsel emailed the Bank's counsel, asking for an update on the preparation of the settlement documents. The Bank's counsel replied: "Yeah, I will send something by COB today. I will leave it to your end, however, to determine what cancellations/releases are necessary for the secondary lien re Greenville, SC property given it is a SC issue." Defendants' counsel

responded that it would be better for the Bank to prepare the release of the Second Mortgage, given its prior experience with liens in South Carolina.

A week later, on February 21, 2017, the Bank's counsel informed defendant's counsel in an email that the Bank was taking the position that the Second Mortgage had not been released by the Settlement. The defendants' counsel replied by email that the parties had already reached an agreement that the Second Mortgage would be released as part of the Settlement and that the Bank was trying to modify those terms. The Bank's counsel did not respond to the email but later reiterated that the Bank "stands by its position" that the Second Mortgage would not be released.

The defendants' counsel subsequently presented the Bank's counsel with formal settlement and release documents that included a requirement that the Bank "execute and cause to be filed in the Greenville, SC real estate records the Cancellation of the Second Mortgage" and attached a mortgage release as an exhibit. The Bank refused to sign the draft settlement and release documents on the ground that the parties had never agreed to release of the Second Mortgage as part of the Settlement.

On March 14, 2017, the defendants filed a motion to enforce the Settlement. The defendants contended that the terms of the Settlement clearly and unambiguously

6

released the Second Mortgage from the Greenville property. The defendants further contended that even if the terms of the Settlement were ambiguous, parol evidence in the form of an affidavit from the defendants' counsel and emails between counsel reflected that the parties intended for the release of the Second Mortgage to be part of the Settlement. The defendants also argued that even if the terms of the Settlement did not obligate the Bank to release the Second Mortgage, Georgia and South Carolina law required the Bank to do so once the indebtedness was satisfied as part of the Settlement. Lastly, as part of their motion, the defendants requested an award of attorney fees and expenses of litigation under OCGA § 9-15-14.

In opposing the defendants' motion, the Bank did not contest that the Settlement was binding and enforceable or that its terms were plain and unambiguous. However, the Bank contended that the unambiguous terms of the Settlement did not require the release of the Second Mortgage from the Greenville property.

The trial court denied the defendants' motion to enforce the Settlement. However, the trial court granted a certificate of immediate review of its order, and the defendants filed an application for interlocutory appeal, which this Court granted. This appeal followed.

1. The defendants argue that the trial court should have granted their motion to enforce the Settlement because it required the release of the Second Mortgage from the Greenville Property. Although the language of the Settlement is ambiguous as to whether the parties intended to release the Second Mortgage, we conclude that the applicable rules of construction and uncontroverted parol evidence demonstrate that the parties intended to release it.[1]

> Because a settlement agreement is a contract, it is subject to the usual rules of statutory construction. While the cardinal rule of construction is to determine the intention of the parties, no construction is required or permitted when the language employed by the parties in

---

[1] We note that the parties agree that the Settlement constituted a valid, binding contract. See generally OCGA § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."); *Paul Dean Corp. v. Kilgore*, 252 Ga. App. 587, 590-591 (1) (556 SE2d 228) (2001) (written communications between counsel can create binding settlement agreement "if they memorialize the terms of the agreement") (citation and punctuation omitted). The parties' sole disagreement is whether the Settlement required the release of the Second Mortgage. We also note that while the parties contemplated the subsequent drafting and execution of more formal settlement documents, that did not change the fact that the Settlement constituted a binding contract. "[T]he drafting of documents necessary to effectuate the settlement agreement may have been a condition of the performance but it was not an act necessary to acceptance of the offer to settle." (Citation and punctuation omitted.) *Johnson v. DeKalb County*, 314 Ga. App. 790, 794 (1) (726 SE2d 102) (2012).

8

the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citation and punctuation omitted.) *Lamb*, 297 Ga. App. at 533 (2). In deciding whether contractual language is plain and unambiguous, this Court has "defined ambiguity to mean duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and . . . being open to various interpretations." (Citations and punctuation omitted.) *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 190 (750 SE2d 463) (2013). Thus, " a word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one." (Citation and punctuation omitted.) Id. "The existence or nonexistence of ambiguity in a contract is a question of law for the court." (Citations and punctuation omitted.) *Safe Shield Workwear v. Shubee, Inc.*, 296 Ga. App. 498, 502 (3) (675 SE2d 249) (2009).

Under the Settlement, the parties agreed to "a full, final, general mutual release of any and all claims and counterclaims arising from the loan documents sued upon in the lawsuit (i.e., the first mortgage on Greenville property remains intact)." We conclude that this contractual language is ambiguous as to whether the parties intended for the Settlement to include the release of the Second Mortgage from the Greenville property. The Settlement does not define the phrase "loan documents sued

9

upon in the lawsuit," which could mean the specific loan documents that the Bank alleged that the defendants had breached (the Note, Guaranty, and Forbearance Agreement), or apply more broadly to all of the documents associated with the Kim Loan (which would include the Second Mortgage), given that the Bank's complaint refers to the "Loan Documents" as "the Note, Security Deed, Change in Term Agreement, Guaranty, and other related document [sic]." Furthermore, the statement in the same sentence of the Settlement that "the first mortgage on Greenville property remains intact" could be construed to simply mean that the Settlement does not apply to the SBA Loan, or it could be construed to more specifically mean that the Second Mortgage would *not* remain intact. In light of these conflicting possible interpretations of the contractual language, we conclude that the Settlement is ambiguous regarding the release of the Second Mortgage on the Greenville property. See *Pace Constr. Corp. v. Houdaille-Duvall-Wright Div., Houdaille Indus.*, 247 Ga. 367, 367-368 (276 SE2d 568) (1981) (undefined term "Contract Documents" found in subcontract was ambiguous); *4 G Properties v. GALS Real Estate*, 289 Ga. App. 315, 316-317 (656 SE2d 922) (2008) (ambiguity existed where "[t]he written instrument did not clearly define what the parties intended by stating that the lease would be considered a 'Master Lease.'").

Although an ambiguity exists in the Settlement regarding the release of the Second Mortgage, it does not automatically follow that a jury must resolve the issue. *Shepherd*, 325 Ga. App. at 191-192. Where an ambiguity exists in a contract, we attempt "to resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties." *Willesen v. Ernest Communications*, 323 Ga. App. 457, 459 (1) (746 SE2d 755) (2013). And, when the rules of construction are applied in this case, the ambiguity in the Settlement is resolved in favor of concluding that the Second Mortgage was intended to be released.

The rules of construction require us "to construe any ambiguities most strongly against the party who drafted the agreement." (Citations and punctuation omitted). *Shepherd*, 325 Ga. App. at 192. See *4 G Properties*, 289 Ga. App. at 316 ("[A]contract capable of being construed two ways will be construed against the party who wrote the contract."). The Settlement was drafted by the Bank's counsel, and thus the ambiguity must be construed against the Bank and in favor of the defendants so as to require the release of the Second Mortgage. See id.

Furthermore, we construe a contract in a manner that does not render any of its language meaningless or mere surplusage, *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 319 (1) (707 SE2d 555) (2011), and under the "expressio unius est exclusio

11

alterius" rule of construction, "the express mention of one thing [in a contract] implies the exclusion of another." (Citations and punctuation omitted.) *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 672 (5) (a), n.97 (802 SE2d 643) (2017). By stating that "the first mortgage on Greenville property remains intact," the Settlement necessarily implies that the Second Mortgage on the same property would *not* remain intact, that is, would be released. Any other conclusion would treat the phrase "the first mortgage on Greenville property remains intact" as surplusage, given that the first portion of the same sentence already limited the general release to documents pertaining to the Kim Loan rather than the SBA Loan, and would violate the rule of "expressio unius est exclusio alterius." See id.

Even if the rules of construction could not resolve the ambiguity, the uncontroverted parol evidence shows that the parties intended for the Settlement to release the Second Mortgage. "[A]lthough parol evidence is generally not admissible to add to, take from, or vary a written contract, because the language of the provision in issue is not clear, we may consider all the attendant and surrounding circumstances to explain the ambiguity." (Citation and punctuation omitted.) *CareAmercia v. Southern Care Corp.*, 229 Ga. App. 878, 881 (1) (494 SE2d 720) (1997). "Where the language of [a written agreement] is ambiguous, and may be fairly understood in

12

more ways than one, it should be taken in the sense put upon it by the parties at the time of its execution, and the court will hear evidence as to the facts and surroundings, and decree according to the truth of the matter." (Citation and punctuation.) *Irwin v. Young*, 212 Ga. 1, 7 (3) (90 SE2d 22) (1955). This is because "[t]he construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." (Citation and punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 541 (2) (466 SE2d 27) (1995).

The defendants presented evidence, through the affidavit of their counsel who negotiated the settlement and emails attached to the affidavit, that a prior offer of settlement made by the Bank on January 18, 2017, also had included the language that the parties agreed to "a full, final, general mutual release of any and all claims and counterclaims arising from the loan documents sued upon in the lawsuit (the first mortgage on Greenville property remains intact)." In her affidavit, the defendants' counsel averred that during a phone conversation with the Bank's counsel about the prior settlement offer, the Bank's counsel had confirmed that the aforementioned language was intended to release the Second Mortgage on the Greenville property.

13

The Bank did not submit any affidavits or other evidence contradicting the account of the phone conversation provided by the defendants' counsel in her affidavit.

The emails that followed the defendants' acceptance of the Settlement provide additional parol evidence in support of the defendants' position that the parties intended to release the Second Mortgage. When defendants' counsel asked, upon the defendants' acceptance of the Settlement, for the Bank's counsel to prepare a release of the Second Mortgage, the Bank's counsel did not object and instead stated that he would work on the settlement documents. The Bank's counsel also did not object when the defendants' counsel asked for an update on preparation of the settlement documents, but instead proposed that the defendants' counsel prepare the release because she was more familiar with South Carolina law. It was not until later, approximately three weeks after the Settlement had been accepted, that the Bank's counsel for the first time indicated that the Bank objected to such a release. The Bank offered no parol evidence that contradicted the defendants' account of the correspondence between counsel upon acceptance of the Settlement.

In light of the applicable rules of construction and uncontroverted parol evidence, the ambiguity in the Settlement is resolved in the defendants' favor, and we therefore conclude that the Settlement was intended by the parties to release the

14

Second Mortgage as a matter of law. See *McKinley v. Coliseum Health Group*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011) (ambiguity in contract resolved "based on the rules of contract construction and parol evidence"); *Ga. State Financing & Investment Comm. v. XL Specialty Ins. Co.*, 303 Ga. App. 540, 544 (1) (694 SE2d 193) (2010) (to extent that contractual language was ambiguous, the ambiguity could be resolved by the rules of construction and the undisputed parol testimony). The trial court thus erred in denying the defendants' motion to enforce the Settlement.

2. The defendants also argue that the trial court erred in denying their request for attorney fees and expenses of litigation under OCGA § 9-15-14. In light of our decision in Division 1 that the trial court erred in denying the defendants' motion to enforce the Settlement, we remand for the trial court to consider the defendants' request for attorney fees and expenses. See *Cracker Barrel Old Country Store, v. Robinson*, 341 Ga. App. 285, 289 (800 SE2d 372) (2017).

*Judgment reversed, and case remanded with direction. McMillian and Mercier, JJ., concur*.