A01A0604. DEERE & COMPANY v. MILLER-GODLEY AUCTION COMPANY.
(549 SE2d 762)

JOHNSON, Presiding Judge.

This case involves a suit for conversion against an auction company. The material facts of the case are not in dispute. Hence, with the consent of the parties, the trial court dismissed the jury which had been impaneled to try the case and considered both parties' motions for a directed verdict. The trial court granted Miller-Godley Auction Company's motion for a directed verdict, finding, in part, that public policy counsels against requiring auctioneers to verify the title of the goods they sell. Deere & Company appeals, alleging the trial court erred in holding that an auctioneer is not liable to a secured creditor for conversion when the auctioneer, without the

secured creditor's knowledge or consent, sells goods in which the secured creditor holds a perfected security interest. We agree with Deere and reverse the trial court's order.

The evidence shows that Miller-Godley auctions farm and construction equipment. It sells the equipment on consignment from the owner and requires the owner to sign a statement to the effect that the owner is the lawful owner of the equipment and that there are no liens on the equipment. Because of the large volume of equipment and the late date that Miller-Godley usually receives the equipment before an auction, lien searches are performed only on those pieces of equipment which Miller-Godley has actual notice may have a problem. This is the custom of the auction industry in the southeast. When the equipment is sold, the purchase price is placed in an escrow account and usually held for ten days to allow "adjustment and investigation" by the buyer. If Miller-Godley is advised that there is a problem with the proposed sale and purchase, then no money is disbursed until the controversy is resolved.

In late 1995 and early 1996, Deere financed the purchase by Southern Farm Investments, Inc. of two pieces of farm equipment: a John Deere grain drill and a John Deere tractor. Deere properly and timely recorded UCC-1 financing statements for both items in Southern's county of residence. On December 28, 1996, without notice to Deere, Southern delivered the pieces of equipment to Miller-Godley. Miller-Godley accepted Southern's false representation that the equipment was not subject to any lien. Miller-Godley did not investigate the representation or perform any check for liens. Miller-Godley then sold the equipment at auction and paid the proceeds, less its commission, directly to Southern. Deere was never notified of the sale and did not discover that the equipment had been sold until nearly two years later. Until this time nearly two years later, the loan secured by the equipment was not in default. After learning of the sale, Deere sought payment for the equipment from Miller-Godley. Miller-Godley refused, and Deere filed the present suit for conversion. Deere made no effort to repossess the equipment and has not initiated a suit against the debtor.

1. While courts in the state of Georgia have not specifically determined whether an auctioneer is liable to a secured creditor for conversion when the auctioneer, without the secured creditor's knowledge or consent, sells goods in which the secured creditor holds a perfected security interest, the analysis of this issue rests on well-established agency law.

(a) *Georgia state agency law.* Conversion involves the unauthorized assumption and exercise of the right of ownership over personal

property belonging to another, contrary to the owner's rights.[1] "Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it."[2] It is well established that an agent may be guilty of conversion even though he has no knowledge of the true owner's title and acts in good faith.[3] The agent, even though innocent, is liable if he assists in a conversion because he stands in the shoes of his principal. The liability of both the principal and the agent is based not upon contract, but upon tort.

Clearly, the relationship between a seller and an auctioneer is that of principal and agent. Equally clear is the fact that an auctioneer exercises an act of dominion over the property he auctions when he sells the property. This is especially true considering the fact that an auctioneer receives a monetary benefit from selling the property. Thus, he personally benefits from any conversion that might occur. Under Georgia law, "[i]t is immaterial that such dominion was exercised in good faith, for whoever meddles with another's property, whether as principal or agent, does so at his [own] peril, and it makes no difference that in doing so he acts in good faith."[4]

Applying these Georgia agency principles, a Georgia federal court noted that an auctioneer should be held liable for conversion when he auctions property on behalf of a principal who has no title.[5] In *United States v. LaGrange Stockyard*, an auctioneer sold cattle in which the United States had a recorded security interest, and the government sued for conversion. As in this case, the auctioneer claimed that he never asserted dominion or control over the cattle, but acted merely as the debtor's agent. The federal court found that a conversion had occurred under Georgia law, holding that an agent may be guilty of conversion even though he has no knowledge of the true owner's title and acts in good faith. Citing cases from the Third, Fourth, Fifth and Ninth Circuits, the court in *LaGrange Stockyard* noted as follows: "The almost universally accepted rule is that an agent, factor, commission merchant or auctioneer who receives property from his principal, sells it and pays the proceeds to him is guilty of conversion if the principal has no title to the property, even though

---

[1] *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).

[2] (Citations and punctuation omitted.) *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, 600 (2) (417 SE2d 386) (1992).

[3] See *Hardin v. City Wide Wrecker Svc.*, 232 Ga. App. 617, 619 (1) (b) (502 SE2d 548) (1998).

[4] (Citation and punctuation omitted.) Id.; see also *Welchel*, supra.

[5] *United States v. LaGrange Stockyard*, 270 FSupp. 492 (N.D. Ga. 1967).

the agent acts without knowledge of the defect title."[6]

(b) *Other jurisdictions.* Every jurisdiction which has considered this question, including 19 states and the federal courts, has held an auctioneer liable for conversion when property is sold subject to a perfected security interest. Articles in American Jurisprudence,[7] Corpus Juris Secundum,[8] and American Law Reports[9] have all reported that the great weight of authority follows the rule that an auctioneer who sells property on behalf of a principal having no title thereto is personally liable to the true owner for conversion. Liability for conversion is usually imposed regardless of the fact that the auctioneer acted in good faith and without actual or constructive knowledge of the security interest.

Miller-Godley cites cases from three states, Kentucky, Tennessee and Mississippi, arguing that we should adopt the minority view recognized by our sister states.[10] However, even under the minority view espoused by Miller-Godley, the auction company would be held liable in this case. While most jurisdictions hold that an auctioneer is liable even if the auctioneer has no knowledge that his principal does not have clear title to the goods the auctioneer sells, these three states have held that an auctioneer is liable only if he has either actual or constructive notice of the owner's secured interest. In the present case, it is undisputed that Deere filed UCC-1 financing statements for both pieces of equipment. The UCC-1 financing statements gave Miller-Godley constructive notice of Deere's security interest.[11]

(c) *Public policy.* The Uniform Commercial Code was intended to create a dependable system of secured transactions which could be protected when there was compliance with the Code's filing requirements. The purpose of UCC financing statements is to provide notice to interested third parties that enforceable security interests may exist in the property.[12] If a third party is permitted to ignore such notice, then financing statements are rendered a nullity.

Miller-Godley contends that mandating auctioneers to perform lien searches would be logistically prohibitive due to the amount of equipment they receive and the late date they receive the equipment.

---

[6] (Citations and punctuation omitted.) Id. at 494.

[7] 7 AmJur2d, Auctions and Auctioneers, § 85 (1997).

[8] 7A CJS, Auctions & Auctioneers, § 24 (1980).

[9] Personal Liability of Auctioneer to Owner or Mortgagee for Conversion, 96 ALR2d 208 (1964).

[10] See *Dixie Stock Yard v. Ferguson*, 192 Miss. 166 (4 S2d 724) (1941); *Abernathy & Long v. Wheeler, Mills & Co.*, 92 Ky. 320 (17 SW 858) (1891); *Frizzell v. Rundle & Co.*, 88 Tenn. 396 (12 SW 918) (1889).

[11] See *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 630 (1) (a) (466 SE2d 872) (1995); *Thomas Ford Tractor v. North Ga. Production Credit Assn.*, 153 Ga. App. 820, 822 (2) (266 SE2d 571) (1980).

[12] See *William Goldberg & Co.*, supra.

However, allowing auctioneers to ignore financing statements simply because the search is inconvenient undermines the very concept of constructive notice in this state. Moreover, every other state which has considered the issue has rejected the public policy arguments raised by Miller-Godley. These other states found that the justification for imposing liability on the auctioneer is that he can more easily search the records for security agreements than can the buyers at an auction.[13]

Auctioneers should be charged with knowing that possession does not equate with, and does not confer upon the possessor-principal, ownership of or title to the possessed property.[14] In addition, if an auctioneer has not had the foresight to protect himself when the goods are offered to him for sale, he can seek indemnity from the principal. This discourages larceny and the reckless sale of personal property.

While an auctioneer's role as a mere agent or conduit may stir sympathy, and it may seem harsh to impose liability for unknowingly aiding the conversion, an analysis of Georgia agency law mandates such a rule. Requiring auction companies to perform lien searches might be a time-consuming procedure and not consistent with existing business practice. However, the public policy issues of upholding the UCC and protecting innocent owners and purchasers balance in favor of this requirement. While Miller-Godley could have applied for a lien search and paid a relatively modest fee to determine that Southern was not the true owner of the equipment, there is absolutely nothing Deere could have done to anticipate Southern's fraud. Holding auction companies liable for conversion will protect, as much as possible, the truly innocent parties: the owner and the purchaser.

The agent stands in the shoes of the seller. Because Miller-Godley became the agent for the dishonest seller, it must stand the loss. Even under the minority view espoused by Miller-Godley, the auction company would be held liable because it had constructive notice of Deere's secured interest.[15] It is undisputed that Deere complied with the UCC filing requirements in this case, and its security interests should have been known and protected.

Miller-Godley argues that in this case, the conversion does not involve the impairment or denial of the rights of the lienholder or owner of the property in question. It points out that most of the cases

---

[13] See *State Bank of Independence v. Equity Livestock Auction Market*, 141 Wis.2d 776, 782-783 (417 NW2d 32, 34) (App. 1987).
[14] See *Parker v. P & N Recovery of N.Y.*, 182 Misc.2d 342, 346-348 (697 NYS2d 462, 467) (Civ. Ct. 1999).
[15] See *William Goldberg & Co.*, supra; *Thomas Ford Tractor*, supra.

cited by Deere involve the sale of cattle or cotton, which Miller-Godley labels "fungible goods." In those cases, the owners must elect money damages. However, in the present case, Deere can sue upon the debt or foreclose its perfected security interest in the equipment. According to Miller-Godley, a person is guilty of conversion only when it would be impossible to recover the secured goods themselves once they enter the stream of commerce.

This analysis ignores the clear mandates of conversion law and agency law in this state: an agent may be guilty of conversion whether the property converted is fungible or not. Moreover, this analysis undermines the reasons behind UCC filing requirements: to provide notice that enforceable security interests may exist in the property. The trial court erred in finding that public policy counsels against requiring auctioneers to verify the title of the goods they sell and in granting Miller-Godley's motion for a directed verdict.

2. Based on our holding in Division 1, we need not address Deere's remaining enumerations of error.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 1, 2001.

*McKelvey & Calhoun, Howard S. McKelvey, Jr., Alston & Bird, Grant T. Stein, Candace N. Smith, Paul J. Kaplan, Dow N. Kirkpatrick II*, for appellant.

*Ken W. Smith*, for appellee.