A06A0295. ALL BUSINESS CORPORATION v. CHOI.
(634 SE2d 400)

MIKELL, Judge.

In this appeal, we affirm the grant of summary judgment to Jin Choi, an attorney who was sued by All Business Corporation ("ABC"), a secured creditor of Sang Woo Gu, for breach of trust and conversion of funds arising out of Choi's closing of the sale of Gu's business to a third party.

On appeal from the grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.[1]

So viewed, the record shows that on July 17, 2001, ABC attempted to perfect a security interest in the assets of Gu's business, known as CCO Check Cashing and located on Buford Highway in Doraville ("the business"). The financing statement filed in DeKalb

---

[1] See *Nuckolls v. Atlanta Marine*, 275 Ga. App. 635, 636 (621 SE2d 590) (2005).

County Superior Court listed the debtor's name as "Gu, SangWoo" and stated the name of the business as "CCO Check Cashing-Buford." The record shows that the debtor's name is actually "Sang Woo Gu" and that the correct name of the business is "CCO Check Cashing."

On or about September 24, 2002, Gu sold the business for $197,000. Choi acted as the closing attorney/escrow agent and prepared the agreement for the sale of the business. The agreement recited that "[i]t is expressly understood and acknowledged by all parties that the Closing Attorney will not do a search for general docket, UCC Financing Statement, or any other forms pertaining to the title of the Business." In the agreement, Gu warranted that there were no liens or encumbrances "of any nature whatsoever unsatisfied against said business." Finally, insofar as it is relevant to this appeal, the agreement provided that Gu and the buyer "acknowledge that the closing attorney of this sale, Jin Choi, Esq., is acting as an escrow agent only in the sale and is not representing either the Buyer or the Seller. . . . Additionally, all parties acknowledge that the closing attorney has not made any representations . . . as to the advisability . . . of this transaction."

Notwithstanding the provision in the agreement stating that he would not search the docket, Choi conducted a UCC record search through the Georgia Superior Court Clerks Cooperative Authority. According to the affidavit Choi filed in support of his motion for summary judgment, he conducted the search utilizing the correct name of the seller, "Sang Woo Gu," and the business, "CCO Check Cashing." Choi averred that he did not find a financing statement under either name for the Buford Highway location, although the search returned financing statements showing that ABC held security interests in three other check cashing concerns owned by Gu. Choi further averred that prior to the sale, he questioned Gu about whether there were any liens on the business, and Gu stated that there were none; that Choi was unaware of ABC's security interest in the business prior to closing the sale and disbursing the proceeds thereof to Gu; that soon after the sale, he learned that Gu owed money to ABC; that Gu used the majority of the proceeds of the sale to pay other debts, but at Choi's request, Gu brought the remaining $80,000 to Choi's office; that Choi offered these funds to ABC's principal, Chang Mo Bang, who rejected the offer; and that Choi returned the funds to Gu at Gu's demand. An affidavit filed by Choi's wife and office manager, June Sun Choi, in connection with an earlier lawsuit, states that the funds were stored in Choi's office from the time of the closing until September 30, 2002, when Gu demanded that Choi return the $80,000.

Bang averred that he learned on September 27 that Gu had defaulted on the underlying obligation of the business and two of the

other check cashing stores and that Gu was indebted to ABC for approximately $235,000. Bang further averred that he notified Choi of Gu's default on or about September 29, 2002; that on the following day, Choi informed Bang that Gu had sold the business and that Choi was holding $80,000 in proceeds from the sale; that Choi offered the funds in exchange for full satisfaction of the $235,000 debt, which Bang refused to accept; and, finally, that he performed a "simple stem search" for "CCO" and "Gu," which revealed ABC's security interest in all four of Gu's stores, including the business at issue.

The record also shows that Choi sent Bang a letter by facsimile on September 30, 2002. In the letter, Choi states that he represents Gu and that Gu intends "to repay the $230,000 that he accepted from you in the form of a loan." Choi notified Bang that Choi was holding $80,000, representing proceeds from the sale of the business, and offered to tender those funds, assign a promissory note of $150,000, and pay an additional $3,000 in cash. The letter also requests a release of all liens placed against Gu's businesses and home. An affidavit from Gu reflects that he asked Choi to send the letter even though Choi had already returned the funds to Gu. The affidavit also states that Gu engaged Choi as a closing attorney but that Choi knew nothing of Gu's "problems" with ABC until after the closing.

Finally, the record shows that on the following day, October 1, 2002, counsel for ABC sent Choi a letter by facsimile demanding immediate possession of the funds representing the proceeds of the sale of the business. In the letter, counsel explained that the funds actually represented proceeds on the sale of ABC's money orders, and as such were trust funds held by Gu as ABC's agent. Counsel further explained that ABC held a security interest in the proceeds. A copy of the security agreements between ABC and Gu was attached to the letter.

Ultimately ABC sued Choi, alleging two causes of action: breach of trust and conversion. In the first count, breach of trust, ABC contended that Choi assumed a fiduciary duty to both Gu and the buyer by acting as the escrow agent; that part of his duty, particularly with respect to the buyer, was to satisfy all liens against the business prior to distributing any proceeds to Gu; that Choi had constructive knowledge of ABC's security interest prior to the sale; that after the sale, ABC notified Choi of its security interest before Choi disbursed the proceeds; and that Choi, in breach of his fiduciary duty, delivered the proceeds of the sale to Gu. ABC claimed damages of $80,000 and sought to recover attorney fees and expenses of litigation as well. In the second count of the complaint, ABC alleged that Choi committed conversion by exercising dominion and control over the proceeds of the sale and paying them to Gu, despite actual and constructive

knowledge of ABC's superior rights. In addition to the other damages claimed in the first count, ABC sought punitive damages in the amount of $100,000.

In his motion for summary judgment, Choi asserted that ABC's security interest in the business was not perfected because the name of the debtor was incorrectly listed; that, as a result, Choi did not have constructive notice of ABC's security interest; and that ABC failed to establish the essential elements of a conversion claim. In a subsequent hearing memorandum, Choi asserted that he owed no duty to ABC with regard to the closing because the buyer and seller agreed that Choi would not perform a search for liens. The trial court granted Choi's motion without stating its reasons therefor.[2] ABC appeals.

ABC argues that the trial court erred in granting summary judgment to Choi because (1) Choi's actual knowledge of ABC's security interest subsequent to closing "trumps any alleged deficiency in [ABC's] [f]inancing [s]tatement"; and (2) the disclaimer clause in the agreement for the sale of the business could not affect Choi's liability to ABC.[3] For clarity, we address ABC's arguments in accordance with the causes of action alleged in its complaint.

1. *Breach of trust.* An action for breach of trust cannot lie absent evidence of a fiduciary duty. "A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[4] In its complaint, ABC asserts that Choi, by acting as escrow agent in the sale of the business, assumed a fiduciary duty to Gu and the buyer to ensure proper application of the proceeds of the sale of the collateral. But ABC has not cited a single Georgia case showing that it is entitled to recover for any alleged breach of a fiduciary duty owed to a third party.[5] Nor has ABC cited Georgia authority in support of its contention that an attorney who prepares closing documents for the sale of a business owes a duty to the seller's secured creditor to discover the security interest prior to the closing.

It is true that, under certain circumstances, when an attorney undertakes to provide information, the attorney owes a duty of reasonable care and competence to "foreseeable third parties who

---

[2] The transcript of the oral argument hearing was omitted from the record on appeal so this Court has not been apprised of the basis for the trial court's order.

[3] ABC advances a third argument, regarding damages, which we find unnecessary to address.

[4] (Citation, punctuation and footnote omitted.) *Bienert v. Dickerson*, 276 Ga. App. 621, 623 (2) (624 SE2d 245) (2005).

[5] Compare *Threatt v. Rogers*, 269 Ga. App. 402, 405 (2) (604 SE2d 269) (2004) (setting forth rules governing fiduciary obligations of an escrow as agent of buyer and seller).

rely upon the information."[6] But in the case at bar, Choi did not undertake to provide information to either Gu or the buyer concerning the status of any liens on the business. In fact, the agreement states to the contrary. The fact that he performed a search for liens does not change this result, because, as we hold in Division 2 (a), infra, ABC's lien was not properly perfected, so that Choi did not have constructive notice of it.

The trial court did not err in granting summary judgment on the breach of trust claim because there is no evidence that Choi owed a duty to ABC.

2. The crux of ABC's appeal is that the trial court erred in granting summary judgment to Choi on its conversion claim. The tort of conversion applicable to secured creditors is as follows:

> A secured creditor has a right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the disposition, and resulting damage to the creditor.[7]

"An exercise of 'dominion or control' over secured property which is 'inconsistent with' the rights of the secured party is conversion,"[8] and this law applies to both the buyer and seller. "Where a sale of collateral is, with respect to the secured party, a conversion of the collateral, there is a conversion on the part of the one who sells, as well as on the part of the one who purchases, and the purchaser may be liable regardless of his intent, and of his lack of actual knowledge

---

[6] (Citations omitted.) *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222, 224 (1) (c) (441 SE2d 686) (1994) (but holding closing attorney did not owe duty to buyers regarding termite report); *Kirby v. Chester*, 174 Ga. App. 881, 884-885 (2) (331 SE2d 915) (1985) (borrower hired attorney to provide lender with certification that the borrower had valid title and that lender's lien would be first priority; lender could sue for malpractice because agreement was intended for lender's benefit); *Simmerson v. Blanks*, 149 Ga. App. 478, 481 (2) (254 SE2d 716) (1979) (attorney may be liable under a voluntary or gratuitous agency theory where that attorney, representing a party other than the plaintiff, gratuitously states that he will file financing statement that it is plaintiff's responsibility to file). Compare *Legacy Homes v. Cole*, 205 Ga. App. 34, 35 (421 SE2d 127) (1992) (closing attorney hired by selling agent owed no duty to sellers/vendors because attorney did not advise or assist them); *McKenna Long & Aldridge v. Keller*, 267 Ga. App. 171, 173-174 (1) (598 SE2d 892) (2004) (alleged failure of law firm to investigate adequately its client's allegations before sending demand letter to adverse party did not give rise to negligence action because firm owed no legal duty to nonclient).

[7] (Citations omitted.) *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 640 (7) (a) (466 SE2d 872) (1995).

[8] (Citations omitted.) *JCS Enterprises v. Vanliner Ins.*, 227 Ga. App. 371, 372 (1) (489 SE2d 95) (1997).

of the rights of the secured party."[9] In the case at bar, we are asked to determine whether the seller's attorney may be held liable for conversion of the collateral. ABC contends that the attorney, who acts as an agent for his client/principal,[10] may be liable under an agency theory for assisting in his client's conversion in the same manner that an auctioneer may be liable to a secured creditor for selling goods in which the secured creditor holds a perfected security interest.[11] An agent, although innocent, may be liable "because he stands in the shoes of his principal."[12]

However, before addressing this broader issue, we must first address whether ABC properly perfected its security interest in the business. If, as Choi contends, ABC's interest was not perfected, then Choi did not have constructive notice of it prior to the sale of the business.

(a) A financing statement is sufficient to perfect a security interest only if it provides the name of the debtor.[13] "A financing statement sufficiently provides the name of the debtor: . . . only if it provides the individual or organizational name of the debtor."[14] Here, the financing statement incorrectly listed the debtor's name as "Gu, SangWoo" and stated the name of the business as "CCO Check Cashing-Buford" rather than "CCO Check Cashing." The consequences of erroneously listing the debtor's name are addressed in OCGA § 11-9-506:

> (a) *Minor errors and omissions.* A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading. (b) *Financing statement seriously misleading.* Except as otherwise provided in subsection (c) of this Code section, a financing statement that fails sufficiently to provide the name of the debtor in accordance with subsection (a) of Code Section 11-9-503 is seriously misleading. (c) *Financing statement not seriously misleading.* If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would

---

[9] (Citations and punctuation omitted.) *Trust Co. of Columbus v. Associated Grocers Co-Op*, 152 Ga. App. 701, 702 (2) (263 SE2d 676) (1979).

[10] See *Vollrath v. Collins*, 272 Ga. 601, 603 (2) (533 SE2d 57) (2000).

[11] See *Deere & Co. v. Miller-Godley Auction Co.*, 249 Ga. App. 797, 798 (1) (549 SE2d 762) (2001).

[12] Id. at 799 (1) (a).

[13] See OCGA § 11-9-502 (a) (1).

[14] OCGA § 11-9-503 (a) (4) (A).

disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with subsection (a) of Code Section 11-9-503, the name provided does not make the financing statement seriously misleading.

(Emphasis in original.)

Choi argues that the evidence establishes that the financing statement was seriously misleading as a matter of law, citing *Receivables Purchasing Co. v. R & R Directional Drilling.*[15] In that case, we affirmed a trial court's finding that a financing statement listing a debtor named "Network Solutions, Inc.," under the incorrect name "Net work Solutions, Inc.," was seriously misleading, so that the creditor did not hold a perfected security interest.[16] It was undisputed that a search through the appropriate clerk's office using the correct name did not reveal the financing statement.[17] In this case, Choi averred that prior to the sale of the business, his office conducted a UCC record search for the seller, "Sang Woo Gu," and the business, "CCO Check Cashing"; and that, using the standard search logic of the filing office for both names, he did not find a financing statement under either name for the Buford Highway location. Bang, on the other hand, averred he performed a "simple stem search" for "CCO" and "Gu," and both searches returned ABC's filings on all four of Gu's stores, including the business at issue. Bang's affidavit does not create an issue of fact, however, because Bang did not search for Gu's correct name. Choi's affidavit establishes without contradiction that a search through the appropriate clerk's office using the correct name did not reveal the financing statement. *Receivables Purchasing Co.* is apposite and controlling. Thus, we conclude that ABC's financing statement is seriously misleading, so that ABC's security interest was unperfected and Choi did not have constructive notice of it.[18]

(b) ABC argues, however, that even absent constructive knowledge, Choi may be held liable for conversion because there is evidence that he had actual knowledge of ABC's security interest in the proceeds of the collateral before he returned the funds to Gu on September 30. We do not agree.

In his affidavit, Bang stated that he was "fairly certain" that he informed Choi on either September 29 or 30 that ABC "had a UCC

---

[15] 263 Ga. App. 649 (588 SE2d 831) (2003).

[16] Id. at 650, 652.

[17] Id. at 652.

[18] See id. Compare *Planned Furniture Promotions v. Benjamin S. Youngblood, Inc.*, 374 FSupp.2d 1227, 1239 (III) (B) (3) (b) (M.D. Ga. 2005) (financing statement listing debtor's name as "Benjamin Scott Youngblood" not seriously misleading although debtor changed name by incorporating under the name "Benjamin S. Youngblood, Inc.").

filing" against the business. Choi, on the other hand, averred that he was not made aware of any security interest in the business prior to the closing or the disbursal of the proceeds thereof, although he became aware "soon afterward" that Gu "might owe money" to ABC. In the letter of September 30, Choi references ABC's "loan" to Gu but does not indicate Choi's awareness of any security interest. Furthermore, ABC's letter to Choi on the following day recognizes that he was unaware of the true status of the funds. The letter states in pertinent part:

> [I]t appears that your client has seriously misinformed you regarding the nature of the relationship between the parties and the ownership of the funds which have been deposited with you. There has been no loan or advance of funds to [Gu]. . . . To the extent that the funds in your hands represent proceeds from the sale of your clients' business, my client has a security interest in those proceeds pursuant to the enclosed security agreement.

Here, the correspondence between the parties constitutes direct evidence that Choi was not aware of the precise nature of ABC's security interest. Bang's affidavit permits only an inference that Choi may have been aware of some type of claim. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."[19]

Under these circumstances, where Choi lacked actual or constructive knowledge of ABC's alleged entitlement to the proceeds in his possession, we hold that no genuine issue of fact remains on ABC's conversion claim.[20] The "broader" issue need not be addressed.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 8, 2006 —
RECONSIDERATION DENIED JULY 25, 2006 — 

---

[19] (Citation and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 89 (1) (586 SE2d 633) (2003).

[20] Compare *Deere & Co.*, supra at 798 (auctioneer who failed to perform a lien search before selling secured property held liable for conversion); *JCS Enterprises*, supra at 372 (tortfeasor's insurer held liable for conversion because it paid the victims the entire proceeds representing the loss of their truck even though a lienholder was noted on the truck's title).

*Smith, White, Sharma & Halpern, Furman Smith, Jr.,* for appellant.

*Jin Choi,* pro se.