**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0592, A14A0593. MARVIN HEWATT ENTERPRISES, INC. v. BUTLER CAPITAL CORPORATION; and vice versa.

McFADDEN, Judge.

This dispute between a secured lender and a landlord arose after the entity that had borrowed from the former and rented from the latter in order to operate a convenience store went out of business. The lender and landlord had entered into a written agreement with one another. Under the terms of that agreement the lender had certain rights and the landlord certain duties upon of termination of the lease. As to the lender's claim of breach of that agreement, the central question is whether a termination occurred. We find the evidence – which establishes without dispute that the landlord facilitated a sale of the business to another of its tenants – sufficient to send that question to a jury. We likewise find the evidence of that facilitation

sufficient to authorize a finding that the landlord participated in an exercise of dominion or control over the secured property inconsistent with the lender's rights and therefore sufficient to send the lender's conversion claim to a jury. But the landlord was entitled to summary judgment on the claim founded on the equitable theory of unjust enrichment because the parties had a contract. As to the counterclaim, we find no abuse of discretion in the trial court's denial of the lender's motions for discovery sanctions and to strike an affidavit.

*Case No. A14A0592.*

1. *Facts.*

A trial court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Citifinancial Svcs. v. Varner*, 320 Ga. App. 170 (739 SE2d 477) (2013) (citation omitted).

Viewed in the light most favorable to the lender, Butler Capital Corporation, as the nonmovant, the record shows that the landlord, Marvin Hewatt Enterprises, is the owner of a commercial property on which sits a convenience store/gas station. In 1999, the landlord entered into a multi-year lease of the property, and in 2007,

Hamilton Mill Food & Gas, Inc. (hereinafter "the tenant") assumed that lease. At that time, the tenant borrowed $250,000 from the lender and gave the lender a security interest in the store's assets as collateral for the loan. In connection with that loan transaction, the lender and the landlord negotiated the landlord agreement at issue in these appeals. The landlord agreement provided, among other things, that upon termination of the lease, the lender would have the option of stepping into the tenant's shoes:

> That Landlord hereby agrees that, if the Lease is terminated for any reason, . . . the Landlord shall enter into a new lease of the Premises with the Lender at the option of the Lender. All provisions of the new lease between Landlord and Lender . . . shall be commensurate with those provisions of the Lease as if the Lease were not then terminated.

In April 2011, the tenant informed the landlord that it "wanted out" of the convenience store, and landlord agreed to "let [it] go." As part of that agreement, the tenant paid all of the rent it owed the landlord through April 2011. Not wanting the store to stop operating, the landlord instructed the tenant of another of its properties (the "successor tenant") to "buy" and take over the store. The successor tenant met with the tenant's owners at the store; an employee of the landlord and an outside

3

auditor also were present. The auditor estimated the value of the inventory, and the successor tenant gave the tenant's owners a check to buy the inventory. The successor tenant began operating the store under a monthly oral lease with the landlord.

In July 2011, the tenant defaulted on its loan with the lender, and the lender learned that the tenant was no longer operating the store. The lender then demanded money damages from the landlord. In an October 2011 letter, the landlord's counsel responded that the tenant had "unilaterally abandoned" the premises and it offered to let the lender assume the lease, "provided all damages from the Tenant's breach have been cured." The lender rejected the offer and filed this action.

2. *Breach of contract.*

The landlord argues that the trial court erred in denying its motion for summary judgment on the lender's breach of contract claim. The lender bases that claim on its contention that the events in April 2011 constituted a termination of the landlord's lease with the tenant, triggering the requirement in the landlord agreement that the landlord give the lender the option of entering into a new lease. Although the landlord argues that, as a matter of law, the lease was not terminated, a fact question exists on this point that precludes summary judgment on the breach of contract claim.

4

As to whether the lease was terminated, our first question is whether the tenant surrendered the premises or abandoned the lease.

> In landlord-tenant law, surrender exists when the tenant voluntarily gives up possession of the premises prior to the full term of the lease and the landlord accepts possession with intent that the lease be terminated. It differs from "abandonment," as applied to leased premises, inasmuch as the latter is simply an act on the part of the lessee alone[.]

Black's Law Dictionary, p. 1444 (6th ed. 1990). "To show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved." *Circle K Stores v. T. O. H. Assocs.*, 318 Ga. App. 753, 757 (2) (734 SE2d 752) (2012) (citation omitted); accord Black's Law Dictionary, supra, p. 1444. In addition,

> [i]t has long been the rule in Georgia that surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them. Where a landlord exercises a control over the premises inconsistent with the tenant's right of occupation, he thereby discharges the tenant from liability for future rent, and a cancellation or rescission of the contract is thus effected by agreement of the parties, express or implied.

*Savannah Yacht Corp. v. Thunderbolt Marine*, 297 Ga. App. 104, 111 (2) (676 SE2d 728) (2009) (citations and punctuation omitted). Accordingly, a surrender, whether express or by operation of law, constitutes a termination of the lease.

Alternatively, if a tenant abandons a premises without the landlord's agreement, the landlord has the option of terminating the lease. *Meek v. Mallory & Evans, Inc.*, 318 Ga. App. 407, 410 (2) (734 SE2d 109) (2012); *Lawson v. Crawford*, 220 Ga. App. 447, 448 (469 SE2d 507) (1996). The landlord also may "obtain[ ] another tenant while holding the original tenant liable for any deficiency that may occur, or . . . permit[ ] the premises to remain vacant while collecting the agreed-upon rent from the original tenant." *Lawson*, 220 Ga. App. at 448 (citation and punctuation omitted).

The evidence viewed most favorably to the lender shows that the tenant asked to surrender the lease and that, in response, the landlord immediately found another tenant, entered into a lease with that successor tenant under different terms than its lease with the tenant, facilitated the transfer of the store's assets from the tenant to the successor tenant, and did not seek to hold the tenant liable for any deficiencies in rent. The landlord's corporate representative (see OCGA § 9-11-30 (b) (6) ) testified that the tenant does not owe it any money. A factfinder could conclude from these actions

6

that the landlord agreed to the tenant's surrender of the lease and intended to terminate the lease. Even if the tenant's departure was an abandonment, a factfinder still could conclude that the landlord opted to terminate the lease, in light of its decision to re-let the premises without seeking to recover a deficiency in rent from the tenant. Compare *Sirdah v. North Springs Assocs.*, 304 Ga. App. 348, 351 (1) (696 SE2d 391) (2010) (where landlord expressly told abandoning tenant that it was not terminating leases, and proceeded to sue tenant for breach, landlord's acceptance of key from tenant did not show intent to terminate).

Notwithstanding the existence of fact questions regarding whether it intended to terminate the lease, the landlord argues that it is entitled to summary judgment because the lease permitted it to terminate the tenant's possession of the premises without terminating the lease. But the paragraph to which the landlord points, titled "Default by Tenant," applies only if one of three conditions is met: if the tenant fails to pay rent, if it otherwise defaults on the lease, or if it files or has filed against it certain specified proceedings. Whether any of these conditions existed in April 2011 is in dispute. The landlord's corporate representative testified that the tenant was current on its rent at that time. Although the landlord appears to take the position that the tenant's departure was a breach of the lease, there is evidence that the landlord

7

agreed to the departure. Moreover, the landlord did not give the tenant notice of any other defaults under the lease, as required by the "Default by Tenant" paragraph. Finally, the landlord has not alleged that any of the proceedings specified in that paragraph had been filed. For these reasons, the record does not show that, as a matter of law, the landlord was entitled to terminate the tenant's possession without terminating the lease.

The landlord also argues that it is entitled to summary judgment because the lender turned down its belated offer for the lender to assume the lease. It is undisputed, however, that the landlord did not give the lender the option of entering into a new lease in April 2011, and by the time it made its offer in October 2011, a third party – the successor tenant – had taken over the business and sold some of the collateral subject to the lender's security interest.[1] Moreover, the October 2011 offer was conditional. Under these circumstances, the trial court did not err in denying summary judgment to the landlord on the breach of contract claim.

3. *Conversion.*

---

[1]We express no opinions regarding any rights the lender may have as to replacement inventory and any duties that the successor tenant may owe the lender. Those issues are not before us.

The landlord argues that it was entitled to summary judgment on the lender's claim for conversion of the store assets in which it had a security interest. We disagree.

A secured creditor such as the lender

> has the right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the disposition, and resulting damage to the creditor. An exercise of dominion or control over secured property which is inconsistent with the rights of the secured party is conversion, and this law applies to both the buyer and seller [of the collateral].

*All Business Corp. v. Choi*, 280 Ga. App. 618, 622 (2) (634 SE2d 400) (2006) (citations and punctuation omitted).

We agree that the evidence does not show that the landlord itself exercised dominion or control over the store assets in which the lender had a security interest. It is undisputed that the landlord was neither the buyer nor the seller of that property; instead, the tenant sold the property to and received payment directly from the successor tenant. And there is no evidence that the landlord acted, as an agent, on behalf of the tenant, as a principal, in the transaction. See generally *Deere & Co. v.*

9

*Miller-Godley Auction Co.*, 249 Ga. App. 797, 799 (1) (a) (549 SE2d 762) (2001) (an "agent . . . is liable if he assists in a conversion because he stands in the shoes of his principal").

Nevertheless, the landlord is not entitled to summary judgment on the conversion claim. The lender also alleged in that claim that the landlord conspired with others to convert the secured property. A plaintiff may recover damages based on civil conspiracy by showing

> that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. The conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and resultant damage. The essential element of the alleged conspiracy is proof of a common design establishing that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design. After the conspiracy is formed, members of the conspiracy are jointly and severally liable for acts of co-conspirators done in furtherance of the conspiracy.

*McIntee v. Deramus*, 313 Ga. App. 653, 656 (722 SE2d 377) (2012) (citations and punctuation omitted). See also *Parrish v. Jackson W. Jones, P. C.*, 278 Ga. App. 645, 649 (3) (629 SE2d 468) (2006). Compare OCGA § 16-4-8 (establishing criminal conspiracy as distinct offense).

10

A factfinder could conclude from the evidence in this case that the landlord and either or both the tenant and the successor tenant conspired to convert the lender's secured property. There is evidence that the landlord procured the successor tenant for the specific purpose of buying the store assets from the tenant and in fact directed the successor tenant to buy the property. The landlord's corporate representative admitted that the landlord was "involv[ed] in getting [the successor tenant] there," and the employee of the landlord who was present at the sale testified that he was there "to make sure [the tenant and the successor tenant] agreed on the inventory." This evidence supports a finding that the landlord arrived at a mutual understanding with the tenant and/or the successor tenant as to how to dispose of the property in which the lender had a secured interest, without the lender's authorization. Accordingly, we affirm the denial of summary judgment to the landlord on the conversion claim.

4. *Unjust enrichment.*

We agree with the landlord, however, that it was entitled to summary judgment on the lender's claim for unjust enrichment. "The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to

11

pay." *Bedsole v. Action Outdoor Advertising JV*, 325 Ga. App. 194, 200 (3) (750 SE2d 445) (2013) (citation and punctuation omitted). The doctrine applies when, as a matter of fact, there is no legal contract. *Tuvim v. United Jewish Communities*, 285 Ga. 632, 635 (2) (680 SE2d 827) (2009); *Parks v. Thompson Builders*, 296 Ga. App. 704, 706 (3) (675 SE2d 583) (2009); *Ades v. Werther*, 256 Ga. App. 8, 10 (1) (567 SE2d 340) (2002). "Where there is an express contract, there can be no recovery based upon an unjust enrichment theory." *Han v. Han*, 295 Ga. App. 1, 4 (3) (a) (670 SE2d 842) (2008) (citation and punctuation omitted).

There is no dispute that the lender and the landlord had an express, legal contract addressing the landlord's obligations to the lender. Consequently, as a matter of law the remedy of unjust enrichment is not available to the lender, and it cannot elect that remedy as an alternative to breach of contract, as it seeks to do. Compare *Ades*, 256 Ga. App. at 10 (1) (where existence of contract is jury question, plaintiff's alternative claim for unjust enrichment can survive summary judgment). The trial court erred in denying summary judgment on this claim.

5. *Attorney fees and punitive damages*.

The landlord argues that the trial court erred in denying it summary judgment on the lender's claims for attorney fees and punitive damages. We disagree. The

landlord's argument is that these claims fall with the lender's primary claims. But as explained above, it is not entitled to summary judgment on the breach of contract and conversion claims.

*Case No. A14A0593.*

6. *Discovery sanctions.*

The lender moved for the trial court to strike the landlord's answer and enter judgment against it because some of the landlord's discovery responses were false. The landlord acknowledged that certain of its initial discovery responses were incorrect and explained that its error arose out of the similarity of the names of the subject property and another of its properties. The trial court accepted that explanation and denied the motion.

We find no error. Trial courts

> have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion. This is because trial judges, through their direct involvement with the case, the parties, and the attorneys, and their familiarity with the actions of the parties in the conduct of discovery in similar cases that are brought to their attention, are in the best position to evaluate the parties' conduct and to determine the appropriate level of sanctions.

*Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 734 (698 SE2d 19) (2010) (citations and punctuation omitted). The trial court was authorized to accept the landlord's explanation. See *Ford Motor Co. v. Conley*, 294 Ga. 530, 547 (3) (a) (4) (__ SE2d __) (2014) (trial court, through its direct supervision of discovery proceedings, has ability to assess conduct, demeanor, and credibility of parties and their counsel).

7. *Motion to strike affidavit.*

The lender also moved to strike the affidavit of the landlord's corporate representative based on discrepancies between the witness's affidavit testimony and his later deposition testimony. The trial court denied the motion, stating that she had "given [the affidavit] proper consideration."

We find no error. Notwithstanding the lender's objections to the affidavit, the trial court was authorized to consider the admissible portions of the affidavit in ruling on the motion for summary judgment. *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 440 (4) (280 SE2d 842) (1981). The record does not show that the trial court abused her discretion in that regard. See *Elrod v. Sunflower Meadows Dev.*, 322 Ga. App. 666, 669 (2) (745 SE2d 846) (2013) ("We review a trial court's decision on a motion to strike for abuse of discretion.") (citation omitted).

*Judgment affirmed in part and reversed in part in Case No. A14A0592; judgment affirmed in Case No. A14A0593. Andrews, P. J., concurs; Ray, J., concurs fully in Divisions 4, 6 and 7, and in the judgment only in Divisions 1, 2, 3, and 5.*

15