**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A0938. REBEL AUCTION CO., INC. v. THE CITIZENS BANK.

MERCIER, Judge.

Rebel Auction Company, Inc. ("Rebel Auction"), a defendant in the underlying suit, appeals the grant of summary judgment to the plaintiff, The Citizens Bank ("Citizens"), and the denial of its own motion for summary judgment. Rebel Auction contends on appeal that the trial court erred in denying its motion to withdraw admissions, in granting summary judgment to Citizens, and in denying Rebel Auction's cross-motion for summary judgment. For the reasons that follow, we affirm the trial court's denial of Rebel Auction's motion to withdraw admissions, reverse the grant of summary judgment to Citizens, and affirm the denial of summary judgment to Rebel Auction.

Citizens filed a petition for writ of possession against Big Metal Construction, Inc. ("Big Metal") and Gina R. Bryant ("Bryant") in the Superior Court of Colquitt County, alleging that the defendants had defaulted on two promissory notes in favor of Citizens that were executed in 2013 by Big Metal and personally guaranteed by Bryant (the "2013 notes"), and seeking possession of the property that served as collateral for the loans. The property includes several forklifts, which are described on a financing statement (the "financing statement") filed March 15, 2011, which is referenced in the 2013 notes and in the corresponding security agreements (the "2013 security agreements"). Citizens later filed an amended complaint that included claims of tortious conversion and fraudulent misrepresentation, contending that Big Metal and Bryant sold all of the machinery that had been pledged as collateral, and that at the time of execution of the 2013 notes, they "had already sold much of the equipment and machinery listed on the UCC and offered as security."

Citizens sent a request for the production of documents to Rebel Auction, directed to "Mr. Larry Davis, Registered Agent," seeking copies of "any and all records, documents, agreements, sales receipts, contracts, payment receipts; names, addresses and purchase price paid by purchasers for any of the equipment related to the sale of equipment for or on behalf of Big Metal Construction, Inc., Gina R. Bryant

2

or C. Ray Bryant . . . from July 1, 2011 through December 31, 2012." Rebel Auction provided in response several bills of sale and an inventory receipt pertaining to several pieces of equipment, each showing sales from "Ray Bryant," "Ray Bryant- Big Metal," "Big Metal Construction," or "Big Metal Construction Co.," to "Four-D," "Four-D Equipment," or "Four-D Equipment Co."

Citizens then filed a second amended complaint, adding Rebel Auction and "Four-D Equipment" ("Four-D")[1] as defendants to the suit, alleging that Rebel Auction, acting as agent for Big Metal, committed tortious conversion by selling property to Four-D that was encumbered by a properly filed UCC financing statement in favor of Citizens. In their joint answer to the complaint, Rebel Auction and Four-D admitted, among other things, that Rebel Auction auctioned and sold to Four-D each piece of machinery and equipment identified in Citizens's complaint; that said items were sold on behalf of Big Metal; and that Rebel Auction was acting as Big Metal's agent at auction. Rebel Auction and Four-D also admitted that "Rebel Auction generally sells equipment and machinery owned by one party to another party without

[1] Rebel Auction asserts that "Four-D Equipment" is not a legal entity registered in Georgia, and that the correct entity name for Four-D, as registered with the Georgia Secretary of State, is "Four-D, Inc."

3

actually taking ownership itself." When their answer was filed on August 4, 2015, Rebel Auction and Four-D were represented by attorney K. S. ("first counsel").

On September 15, 2015, Citizens sent its first request for production of documents and first continuing interrogatories to defendant Rebel Auction. On October 8, 2015, Citizens sent its first requests for admissions to Rebel Auction. On October 12, 2015, first counsel moved the trial court for permission to withdraw from representation of Rebel Auction and Four-D. On October 26, 2015, attorneys J. S., J. G. and W. R. (collectively, "second counsel") filed an entry of appearance on behalf of Rebel Auction. On November 3, 2015, an order was entered permitting first counsel's withdrawal from the case.

On December 11, 2015, Citizens moved for summary judgment against Rebel Auction, noting that as of December 9, 2015, no response to its requests for admissions had been filed. A Rule 5.2 certificate of service filed January 4, 2016 indicated that second counsel served Rebel Auction's response to the requests for admissions on Citizens on December 30, 2015. Rebel Auction concedes that all of the allegations in Citizens's requests for admissions to Rebel Auction stand admitted because Rebel Auction did not respond within thirty-three days of service. See OCGA § 9-11-36 (a) (2); OCGA § 9-11-6 (e).

4

Furthermore, although Rebel Auction's late written responses to the requests for admission are not contained in the record, Rebel Auction states in its brief that its "second counsel did respond to [the] request for admissions, albeit late," and that its "[s]econd counsel . . . based the response to the request for admissions primarily upon . . . [Rebel Auction's] answer and defenses, which first counsel filed." Rebel Auction also states that its "original answer and the late response to request for admissions admitted that [Rebel Auction] conducted an auction for certain equipment owned by Big Metal Construction, Inc. and that Four-D Equipment purchased said equipment at said auction, . . . [and] further admitted that [Rebel Auction] acted as agent for Big Metal Construction, Inc. at said auction."

On February 1, 2016, an entry of appearance was filed by attorneys J. S. and B. H. ("third counsel") on behalf of Rebel Auction and Four-D. On February 11, 2016, third counsel filed on behalf of Rebel Auction responsive pleadings in opposition to Citizens's summary judgment motion, including a cross-motion for summary judgment, an amended answer to the complaint, a motion to withdraw its prior admissions with supplemental responses to the requests for admission, and a brief in support of its motion to withdraw its prior admissions.

In support of the motion to withdraw prior admissions, Rebel Auction submitted an affidavit from George Larry Davis, who was both the CEO of Rebel Auction and the CFO of Four-D. The affidavit essentially stated that an independent contractor of Four-D negotiated the sale of the equipment in question by Big Metal to Four-D; that Rebel Auction had no role in those sales; that Four-D subsequently contracted with Rebel Auction to sell the equipment at auction; that Rebel Auction paid the proceeds from the sale of the equipment directly to Four-D; and that Rebel Auction had no role whatsoever in the sale of the equipment from Big Metal to Four-D. The affidavit referenced an attached check ledger "showing checks issued by [Four-D] to [Big Metal] in the years 2011 and 2012," to demonstrate that Big Metal sold the equipment to Four-D directly, but no such document was attached to the affidavit. The affidavit further stated that, having had the opportunity to review the late responses to the request for admissions filed by Rebel Auction's previous counsel, Davis "now realize[s] that Rebel Auction['s] . . . responses . . . were incorrect." It appears from the record that the trial court held a hearing on the motion to withdraw admissions and the summary judgment motions, but no transcript of the hearing was prepared. The trial court denied Rebel Auction's motion to withdraw admissions,

granted Citizens's motion for summary judgment, and denied Rebel Auction's cross-motion for summary judgment.

1. Rebel Auction contends that the withdrawal of its admissions would have preserved a determination of the case on its merits, and therefore the trial court erred in denying its motion to withdraw them. We disagree.

OCGA § 9-11-36 (b) provides that "the court may permit withdrawal or amendment [of admissions] when [1] the presentation of the merits of the action will be subserved thereby[,] and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." This statutory provision "vests broad discretion in the trial court to permit withdrawal or amendment of the admission, and the trial court's ruling on this issue may be reversed only upon a showing of abuse of discretion." *Turner v. Mize*, 280 Ga. App. 256, 257 (1) (633 SE2d 641) (2006) (citation and punctuation omitted).

> The movant has the initial burden of demonstrating that presentation of the merits of the action will be served by allowing the withdrawal of its admissions. In carrying that burden, [Rebel Auction] was required to show that the admitted requests either were refutable by admissible evidence having a modicum of credibility or were incredible on their face,

7

and that its denial was not offered solely for the purposes of delay. . . .If the movant satisfies the court on the first prong, the burden is on the respondent to show that the withdrawal or amendment will prejudice the respondent in maintaining its action or defense on the merits. In that respect, merely being forced to go to trial is not such a prejudice as will prevent the withdrawal of admissions.

*Elrod v. Sunflower Meadows Dev., LLC*, 322 Ga. App. 666, 668 (1) (745 SE2d 846) (2013) (citations and punctuation omitted).

Here, the only evidence upon which Rebel Auction relies is the self-serving affidavit of its CEO, which directly contradicts (1) the admissions in Rebel Auction's original answer to the complaint, (2) its admissions by operation of law due to the failure to timely respond to the request for admissions, and (3) the untimely first written admissions made after Citizens moved for summary judgment. No explanation is given for the direct contradictions. Rebel Auction points to no record evidence to support its new denials. Notably absent from the Davis affidavit and from the record is any information about the parties who purportedly bought the equipment in question from Four-D, as well as any proof of such sales from Four-D to other parties, even though Davis averred that Rebel Auction acted as an agent for Four-D and sold the equipment at auction on its behalf, rather than having sold the property to Four-D on

8

behalf of Big Metal. Under these circumstances, the trial court was authorized to construe the contradictory assertions against Rebel Auction and find that they did not have the required "modicum of credibility." See *Fox Run Properties, LLC v. Murray*, 288 Ga. App. 568, 571-572 (1) (654 SE2d 676) (2007); *Turner*, supra. Furthermore, Rebel Auction has not demonstrated that the prior admissions were incredible on their face. See *Elrod*, supra.

The trial court's order in this case simply states that the motion to withdraw admissions is denied, with no explanation of the trial court's application of the two-pronged test. However, the trial court was authorized to find that Rebel Auction did not meet the first prong of the test based on the record, we have no transcript of the hearing on the motion, and "there is a presumption that a trial court acts properly in the exercise of its duties." *Byrd v. Rachaman*, 294 Ga. App. 869, 870 (670 SE2d 458) (2008). There is no showing of abuse of discretion here and we therefore affirm the trial court's denial of Rebel Auction's motion to withdraw admissions.

2. Rebel Auction contends that the trial court erred in denying its cross-motion for summary judgment because it did not commit the tort of conversion as a matter of law. We review a trial court's grant or denial of a motion for summary judgment de novo. *Johnson v. Omondi*, 294 Ga. 74, 76 (751 SE2d 288) (2013). We "determine

9

whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Ford v. Bank of Am. Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006).

> Conversion involves the unauthorized assumption and exercise of the right of ownership over personal property belonging to another, contrary to the owner's rights. Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is well established that an agent may be guilty of conversion even though he has no knowledge of the true owner's title and acts in good faith. The agent, even though innocent, is liable if he assists in a conversion because he stands in the shoes of his principal. The liability of both the principal and the agent is based not upon contract, but upon tort. Clearly, the relationship between a seller and an auctioneer is that of principal and agent. Equally clear is the fact that an auctioneer exercises an act of dominion over the property he auctions when he sells the property.

*Deere & Co. v. Miller-Godley Auction Co.*, 249 Ga. App. 797, 798-799 (1) (a) (549 SE2d 762) (2001) (footnotes and punctuation omitted).

10

Rebel Auction argues that the instant case is distinguishable from *Deere & Co.*, because Rebel Auction did not act as agent for Big Metal, and *Deere & Co.* "only applies to a factual scenario in which an auctioneer sells personal property owned by a debtor who has authorized its lender to file a UCC-1 lien." Rebel Auction asserts that Four-D purchased the equipment at issue in this suit from Big Metal, and then Four-D contracted with Rebel Auction to sell it. Thus, it contends, *Deere & Co.* is not controlling here. However, given our holding in Division 1, this argument is unavailing because Rebel Auction admitted the allegations that it sold the equipment to Four-D on behalf of Big Metal as set forth above. Thus, the trial court did not err in denying Rebel Auction's motion for summary judgment on this basis.

3. Rebel Auction further contends that the trial court erred in denying its motion for summary judgment and in granting summary judgment to Citizens because the financing statement upon which Citizens relies is invalid. The financing statement was filed in the Superior Court of Berrien County on March 16, 2011. Citizens is listed on the financing statement as the secured party, and the debtor is listed as "Big Metal Construction Inc. Payroll Account." The collateral is described as "UCC-1 COVERING ALL EQUIPMENT LISTED (SEE ATTACHED)." It is undisputed that the forklifts in question are listed on the attachment to the financing statement.

(a) Rebel Auction contends that the financing statement is invalid because it does not correctly list the name Big Metal Construction, Inc. as the debtor, but rather, lists "Big Metal Construction Inc. Payroll Account." It is undisputed that the correct entity name for Big Metal was not listed on the financing statement.

OCGA § 11-9-502 (a) provides that "a financing statement is sufficient only if it: (1) Provides the name of the debtor." OCGA § 11-9-503 (a) provides that

> [a] financing statement sufficiently provides the name of the debtor: (1) . . . if the debtor is a registered organization . . ., only if the financing statement provides the name that is stated to be the registered organization's name on the public organic record most recently filed with or issued or enacted by the registered organization's jurisdiction of organizations which purports to state, amend, or restate the registered organization's name.

OCGA § 11-9-506 provides:

> (a) . . . A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading. (b) . . . Except as otherwise provided in subsection (c) of this Code section, a financing statement that fails sufficiently to provide the name of the debtor in accordance with subsection (a) of Code Section 11-9-503 is seriously misleading. (c) . . . If a search of the records of the filing office under the debtor's correct name, using the filing office's

12

standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with subsection (a) of Code Section 11-9-503, the name provided does not make the financing statement seriously misleading.

Relying on OCGA § 11-9-503 (a), Rebel Auction contends that because the listed name was incorrect, the financing statement was invalid. However, Rebel Auction does not address whether, pursuant to OCGA § 11-9-506 (c), "the name provided [on the financing statement] does not make the financing statement seriously misleading." Citizens contends that, pursuant to OCGA § 11-9-506 (c), "had Rebel Auction . . . performed a standard UCC search for 'Big Metal Construction, Inc.,' it would have revealed the UCC-1 Financing Statement which is at issue here."

Because neither party points to any evidence demonstrating whether such a search would reveal the financing statement, an issue of material fact remains as to whether the financing statement was valid in this regard and thus whether Citizens's security interest was perfected. Compare *All Bus. Corp. v. Choi*, 280 Ga. App. 618, 623 (2) (a) (634 SE2d 400) (2006) (where an affidavit established without contradiction that a search through the appropriate clerk's office using the correct name did not reveal the financing statement with the name listed incorrectly, and the opposing

13

affidavit did not demonstrate a search for the correct entity name, the financing statement was found to be seriously misleading); *Receivables Purchasing Co. v. R & R Directional Drilling, LLC*, 263 Ga. App. 649, 652 (588 SE2d 831) (2003) (where it was undisputed that a search through the appropriate records using the correct name "Network Solutions, Inc." did not reveal the financing statement incorrectly filed under the name "Net work Solutions, Inc.," the trial court correctly concluded that the financing statement was seriously misleading). Because a triable issue of material fact remains as to this question, and thus as to whether the property at issue in this suit was encumbered by a properly filed UCC financing statement, the trial court erred in granting summary judgment to Citizens and we reverse said grant. For the same reason, Rebel Auction did not pierce Citizens's pleadings by showing that no jury issue exists as to an essential element of Citizens's conversion claim based on the incorrect name on the financing statement, and therefore Rebel Auction was not entitled to summary judgment on this basis. See generally *Garrett v. Nationsbank, N.A.*, 228 Ga. App. 114, 115 (491 SE2d 158) (1997).

(b) Rebel Auction also argues that the financing statement is invalid because no valid security agreement was in place at the time the financing statement was filed. "A filed record is effective only to the extent that it was filed by a person that may file it

14

under Code Section 11-9-509." OCGA § 11-9-510 (a). OCGA § 11-9-509 pertinently provides:

> (a) . . . A person may file an initial financing statement . . . only if: (1) [t]he debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c) of this Code section; . . . (b) . . . By authenticating or becoming bound as debtor by a security agreement, a debtor . . . authorizes the filing of an initial financing statement . . . covering: (1) The collateral described in the security agreement."

"A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." OCGA § 11-9-203 (a). "[A] security interest is enforceable against the debtor and third parties with respect to the collateral only if: (1) Value has been given; (2) The debtor has rights in the collateral . . . and (3) One of the following conditions is met: (A) The debtor has authenticated a security agreement that provides a description of the collateral." OCGA § 11-9-203 (b) (3) (A).

OCGA § 11-9-502 (d) provides that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches," and OCGA § 11-9-308 (a) provides that "[a] security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches."

15

Citizens points to a Multipurpose Note and Security Agreement between Citizens as lender and "Big Metal Construction Inc. Payroll Account" as borrower, which bears a "loan date" of March 10, 2011 (referred to herein as the "2011 security agreement."). The 2011 security agreement states, next to the caption "SECURITY," "I give you a security interest in the following: UCC-1 COVERING ALL EQUIPMENT LISTED (SEE ATTACHED)." Beside a checked box, the agreement states, "If checked, this Note is secured by a separate: UCC-1 AND GUARANTEE." The agreement also states, "I authorize you to file a financing statement describing the secured property and any other liens held by you." The 2011 security agreement is signed by Bryant, with the title of "President." Although there is a space designated "Date" next to Bryant's signature, no date is written therein.

Rebel Auction argues that because Bryant's signature is not dated and because the financing statement was not attached to the 2011 security agreement, Citizens cannot demonstrate that it had a valid security agreement in place describing the collateral, as needed to authorize the filing of the financing statement on March 16, 2011. Citizens, on the other hand, asserts that "the loan was consummated on March 10, 2011 . . . [and] [a]t that time, Big Metal provided a list of equipment to offer as collateral. The following . . . week, [Citizens] filed the . . .[f]inancing [s]tatement of

16

record on March 16, 2011[, and] . . . [t]he . . . [f]inancing [s]tatement was then placed in the file as the attachment to the [s]ecurity [a]greement."

Rebel Auction also argues that the 2013 notes and the 2013 security agreements, which were executed by Bryant on behalf of Big Metal in 2013, and which Citizens attached to its first amended complaint, did not authorize the filing of the financing statement. Citizens contends that the Multipurpose Note dated August 2013 was a renewal of the 2011 security agreement. The note and security agreement dated July 9, 2013 and executed on July 12, 2013 both reference the "UCC dated 3/16/2011 covering all equipment listed on attached list" with regard to security for the loan. The note and security agreement dated and executed on August 19, 2013 both reference the "UCC dated 3/16/2011 covering all equipment listed."

Rebel Auction was not entitled to summary judgment based on this issue. Rebel Auction does not dispute that Bryant signed the 2011 security agreement; the 2011 security agreement bears a loan date of March 11, 2011 (albeit not beside Bryant's signature); the 2011 agreement references a UCC financing statement; a UCC financing statement was filed by Citizens on March 16, 2011; both the 2011 agreement and the financing statement identify the debtor/borrower as "Big Metal Construction Inc. Payroll Account"; and the 2013 notes and 2013 security agreements signed by Bryant

17

reference and acknowledge the financing statement. The evidence demonstrates that Bryant authenticated the 2011 security agreement, and gives rise to the inferences that the financing statement described the property that secured the loan, and that Citizens's security interest in the equipment attached and was perfected prior to the dates on which Rebel Auction is alleged to have sold the equipment to Four-D (July 19, 2011, August 24, 2011, November 14, 2011, December 12, 2011, February 29, 2012, and January 24, 2013). Construing all evidence and the inferences arising therefrom in favor of Citizens as the non-moving party, we find that Rebel Auction did not pierce Citizens's pleadings as to the issue of the validity of the security agreement so as to warrant summary judgment against Citizens on its conversion claim. See generally, *Garrett*, supra. We therefore affirm the trial court's denial of summary judgment to Rebel Auction.

*Judgment affirmed in part; reversed in part. Barnes, P. J., and McMillian, J., concur.*